3/28/02

**THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.**

Paper No. 19
GDH/gdh

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Phillips-Van Heusen Corp.

_____

Serial No. 75/664,835

_____

Edward E. Vassallo and Erica Rayburn Halstead of Fitzpatrick, Cella, Harper & Scinto for Phillips-Van Heusen Corp.

Michael L. Engel, Trademark Examining Attorney, Law Office 108 (David E. Shallant, Managing Attorney).

_____

Before Hohein, Chapman and Bottorff, Administrative Trademark Judges.

Opinion by Hohein, Administrative Trademark Judge:

Phillips-Van Heusen Corp. has filed an application to register the term "SUPER SILK" for "clothing, namely[,] dress shirts and sport shirts made of silk-like fabric."[1]

---

[1] Ser. No. 75/664,835, filed on March 19, 1999, based upon an allegation of a bona fide intention to use such term in commerce.

Registration has been finally refused under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), on the ground that, when used on or in connection with applicant's goods, the term "SUPER SILK" is deceptively misdescriptive of them. Registration also has been finally refused under Section 2(a) of the Trademark Act, 15 U.S.C. §1052(a), on the basis that such term comprises deceptive matter in that it falsely and materially indicates that applicant's goods contain silk when, in fact, they do not.

Applicant has appealed. Briefs have been filed,[2] but an oral hearing was not requested. We affirm the refusals to register.

---

[2] Applicant, in its brief, reiterates its alternative contention, which it first raised in response to the initial Office Action, that the term "SUPER SILK" has acquired distinctiveness for its goods and hence is registrable pursuant to the provisions of Section 2(f) of the Trademark Act, 15 U.S.C. §1052(f). In particular, applicant notes that at one time it "owned a prior registration for the exact mark for the exact goods, which was not based on a Section 2(f) showing of distinctiveness." Applicant maintains, in this regard, that in view of Trademark Rule 2.41(b), its ownership of Reg. No. 1,077,470, which issued on the Principal Register on November 15, 1977 in respect of the mark "SUPER SILK" (with the word "SILK" disclaimed) for "dress shirts and sport shirts made of silk-like fabric," should "be accepted as prima facie evidence of distinctiveness." This is especially so, applicant insists, in light of the fact that such mark "was in use for more than five years, as evidenced by the accepted and acknowledged Section[s] 8 and 15 [affidavit] filed in connection with ... [the] prior registration[,] and, thus, had acquired distinctiveness." However, as the Examining Attorney correctly states in his brief, Trademark Rule 2.41(b) "applies only to live registrations, not expired ones," and "the prior

Applicant does not appear to disagree with the Examining Attorney as to the proper standards for determining whether a mark is deceptively misdescriptive under Section 2(e)(1) and whether it is deceptive within the meaning of Section 2(a). Specifically, as set forth

---

registration [has] expired ...." See TMEP §1212.04(d). Thus, applicant's expired registration merely constitutes evidence that the registration issued, see, e.g., Sunnen Products Co. v. Sunex Int'l Inc., 1 USPQ2d 1744, 1747 (TTAB 1987), but any benefits conferred by the registration, including the evidentiary presumptions afforded by Section 7(b) of the Trademark Act, 15 U.S.C. §1057(b), were lost when the registration expired, see, e.g., Anderson, Clayton & Co. v. Krier, 478 F.2d 1246, 178 USPQ 46, 47 (CCPA 1973). Moreover, insofar as the affidavit previously filed by applicant under Sections 8 and 15 of the Trademark Act, 15 U.S.C. §§1058 and 1065, is concerned, such affidavit cannot serve as evidence of acquired distinctiveness for the term applicant presently seeks to register inasmuch as Trademark Rule 2.41(b) requires that a claim of acquired distinctiveness which is based upon substantially exclusive and continuous use of a mark in commerce be "for the five years before the date on which the claim of distinctiveness is made," which in this case is the date of applicant's response to the initial Office Action. TMEP §1212.05. Furthermore, and in any event, a claim of acquired distinctiveness is not available to permit registration of a deceptive, as opposed to a deceptively misdescriptive, mark. Section 2(f) of the Trademark Act and TMEP §1212.02(a). Finally, as to the request in applicant's brief that, "even if these refusals are maintained, ... its application be amended to the Supplemental Register," it is pointed out that under Trademark Rule 2.142(g), "[a]n application which has been considered and decided on appeal will not be reopened" for such purpose. In addition, as correctly noted by the Examining Attorney in his brief, not only can applicant, in light of Trademark Rule 2.47(c), presently "not go on the Supplemental Register until it has alleged use of the mark in commerce by filing an Amendment to Allege Use," but an amendment of the application to the Supplemental Register would not contravene the refusal under Section 2(a) of the statute that the term "SUPER SILK" is deceptive. Section 23(a) of the Trademark Act and TMEP §1203.02(a). Accordingly, amendment of the application to the Supplemental Register is not permissible.

in, for example, In re Quady Winery Inc., 221 USPQ 1213, 1214 (TTAB 1984), a mark is deceptively misdescriptive if the following two-part test is met: (1) Does the mark misdescribe the goods or services? (2) Are consumers likely to believe the misrepresentation? A mark satisfying such criteria is additionally considered to be deceptive if the misrepresentation would be a material factor in the purchasing decision. Id. Thus, as set forth in the leading case of In re Budge Manufacturing Co. Inc., 857 F.2d 773, 8 USPQ2d 1259, 1260 (Fed. Cir. 1988), a mark must meet the following three-prong test to be adjudged deceptive:

> (1) Is the term misdescriptive of the character, quality, function, composition or use of the goods [or services]?

> (2) If so, are prospective purchasers likely to believe that the misdescription actually describes the goods [or services]?

> (3) If so, is the misdescription likely to affect the decision to purchase?

Provided that the United States Patent and Trademark Office puts forth sufficient evidence to establish *prima facie* that each of the above elements is met, a mark is deceptive and thus is unregistrable under Section 2(a). 8 USPQ2d at 1261.

Turning first to the refusal on the basis of deceptive misdescriptiveness, applicant contends that, in light of the following definitions of record from an unspecified dictionary, "[t]he terms 'super' and 'silk' each have several meanings":

> "**super**," which is defined as an adjective as "**1** [by shortening] : SUPERFICIAL ... **2** [short for *superfine*] **a** (1) : of a superfine grade or quality (2) : of great worth, value, excellence, or superiority ... **b** : possessing the greatest size, power, complexity, intensity, or development : being very great ... **c** (1) : exhibiting the characteristics of its type to a great or excessive degree ... : *specif* : manifesting excessive loyalty ... (2) : carried, developed, or made use of to an excessive degree ... **d** : embracing in its structure or authority complexes of its own nature ...." and as a noun as "**1** ... **a** : SUPERNUMERARY; *esp* : a supernumerary actor **b** : one in a position of authority or superiority : SUPERINTENDENT, SUPERVISOR **2** ... : a removable upper story of a beehive containing sections for the storage of honey **3** ... : WATCH ... **4** ... **a** : a superfine or superior grade or quality : an extra large size **b** : an article of merchandise of a superfine grade, quality, or large size **5** [by shortening] : SUPERPHOSPHATE **6** ... : a thin loosely woven open-meshed starched cotton fabric used esp. for reinforcing books **7** [by shortening] : SUPERMARKET"; and

> "**silk**," which is defined as an adjective as "**1** : relating to or made

of silk : SILKEN ...  **2** : resembling silk" and as a noun as "**1** : a fine continuous protein fiber produced by various insect larvae usu. for cocoons; *esp* : the lustrous tough elastic hygroscopic fiber that is produced by silkworms by secreting from two glands viscous fluid in the form of two filaments consisting principally of fibroin cemented into a single strand by sericin and solidifying in air, that is capable of being reeled in a single strand from the cocoon, and that with or without boiling off the sericin is used for textiles  **2 a** : thread, yarn, or fabric made from silk filaments ... **b** : strands of silk thread of various thicknesses and plain or braided used as a suture material in surgery ...  **3 a** : a garment (as a dress) of silk : silk apparel ... **b (1)** : a gown worn by a King's or Queen's Counsel or barrister of high rank appointed by the lord chancellor **(2)** : a King's or Queen's Counsel **(3)** : the rank or persons entitled to such a gown ... **c silks** *pl* : the colored cap and blouse of a jockey or harness horse driver made in the registered racing color of the stable for which he is riding or driving in a particular race  **4 a** : a filament resembling silk but produced by some other organism:  as (1) : the filament produced by various spiders esp. in building their webs and used for cloth and telescopic sights (2) : the byssal thread of a mollusk ... **b** : a thread of such material or of wire (as used in a sieve of a sifter in flour milling)  **5 a** : CORN SILK **b** :a style of corn silk ...  **6** : inclusions of minute crystals that impart a silky luster to a gem (as a ruby)  **7** : SILK SPONGE  **8** : PARACHUTE ...."

Applicant maintains, in light of the above, that (italics
in original):

> Because SUPER and SILK each have
> various meanings, the composite term
> SUPER SILK has countless connotations.
> Therefore, when viewed *in its*
> *entirety*, the composite mark SUPER
> SILK is not merely deceptively
> misdescriptive of Applicant's goods
> because it does not have only one
> meaning, namely a misdescriptive
> meaning.

Applicant also argues that because the term
"SUPER SILK brings to mind a fabric that is similar but
superior to silk, consumers will not purchase Applicant's
goods with the belief that they are made from silk."
Hence, applicant urges that such term is suggestive
rather than deceptively misdescriptive.  In particular,
applicant points to the copy which it made of record of
the file history for its now expired registration of the
mark "SUPER SILK" (with the word "SILK" disclaimed) for
"dress shirts and sport shirts made of silk-like fabric,"
noting that such registration was allowed over an initial
refusal to register on the ground of deceptive
misdescriptiveness.  Likewise, as shown by the copies of
the file histories thereof which it has also made of
record, applicant maintains that "the [United States]
Patent and Trademark Office has permitted registration of

7

other marks containing the term 'silk' for goods which do not contain silk." Those marks, which are registered on the Principal Register, are: "SILK-AIRE" for "women's clothing--namely, sweaters"; "SILK SAVER" (in stylized form) for a "stretch lace bolero garment worn beneath outer clothing to protect the outer garment from stains and odors"; and "RAINSILK" for "clothing, namely, coats, jackets, and raincoats."

Furthermore, based upon the copies which it has made of record of third-party registrations on the Principal Register of the marks "BODY SUEDE" (with the word "SUEDE" disclaimed) for "panties and bras,"[3] "HYDRA SUEDE" (with the word "SUEDE" disclaimed) for "activewear, namely[,] shirts, shorts, pants, tights, sweatshirts, jackets and running tights," "FRENCH SUEDE LUXE SHEER" (with the words "FRENCH" and "SUEDE" disclaimed) for "hosiery" and "SATIN DOLL" for "hosiery and panty hose,"[4] applicant insists that:

---

[3] Although applicant additionally has introduced a copy of a third-party registration of the mark "COTTON SUEDE" for "bras, panties, camisoles and crop tops, all made in whole, or significant part[,] of cotton," such registration issued on the Supplemental Register rather than the Principal Register and thus evidences that registration of the subject mark was barred by Section 2(e)(1) of the statute.

[4] While applicant also submitted a copy of a third-party application for the mark "SATIN DOLLS" for various items of "cold weather apparel" and "vests and shirts made of fleece,"

Similarly, the PTO has allowed registration of marks containing other fabrics where the goods do not contain that fabric. For example, ... the term "suede" has been registered for clothing that does not contain suede, *i.e.* bras, underwear, activewear and hosiery. .... Also ..., the term "satin" has been registered for clothing that does not contain satin, *i.e.* ... hosiery. .... This reflects a common practice in the textile industry whereby trademarks contain terms that reference superior or desirable qualities of the particular product being sold whether or not the items contain such qualities. Accordingly, by allowing [such] registrations ..., as well as those ... involving "silk," the PTO has acknowledged that consumers do exercise care in purchasing clothing and do not regard a particular mark as making a guarantee about the clothing's contents. Thus, similar to the "suede" and "satin" registrations, consumers will not believe that Applicant's goods contain silk; rather they will believe that Applicant's goods contain fabric that is silk-like or superior to silk.

The Examining Attorney, on the other hand, asserts that because applicant's goods are identified as "dress shirts and sport shirts made of silk-like fabric" rather than as being made from silk, and because "applicant has at no point argued that its goods will contain any silk," it is clear that use of the word

---

such has no probative value other than as evidence that the application was filed.

"SILK" in the term "SUPER SILK" misdescribes applicant's goods.  In addition, the Examining Attorney insists that the word "SILK" in the term at issue plainly "would cause consumers to believe applicant's shirts are made of silk" when in fact they are not.  According to the Examining Attorney, "[t]his belief on [a] consumer's part is entirely plausible, as shirts are commonly made of silk," and thus, "[b]ecause the misdescriptiveness of SILK to the identified goods is indisputable, the key issue is how consumers would interpret SUPER, the only other word in the mark."

In support of his position, the Examining Attorney has made of record the following definition from The American Heritage Dictionary of the English Language (3d ed. 1992):

> "**super**," which as an (informal) adjective is listed as meaning "**1.** Very large, great, or extreme:  'yet another super Skyscraper' ....  **2.** Excellent; first rate:  *a super party*" and as a noun is set forth as signifying "**1.**  *Informal.*  An article or a product of superior size, quality or grade.  **2.**  *Informal.*  **a.** A superintendent in an apartment or office building.  **b.**  A supernumerary.  **3.**  *Printing*.  A thin starched cotton mesh used to reinforce the spines and covers of books."

10

In view thereof, the Examining Attorney argues that, as

stated in his brief:

> The addition of SUPER to the
> misdescriptive term SILK would not
> reliably dissuade consumers from
> believing the goods were made of silk.
> Due to the order of the words in the
> mark, and the meanings of SUPER as a
> noun, it is extremely unlikely that
> consumers would attach any of the noun
> meanings to the term.  Because SILK is
> ... a noun ..., consumers are most
> likely to interpret SUPER in either of
> its adjective meanings, namely,
> "[v]ery large, great, or extreme" or
> "excellent; first-rate."  It is likely
> that applicant would like consumers to
> believe its goods are excellent,
> first-rate, and great, and these are
> the most likely meanings consumers
> will take away upon viewing the mark.
> It is less likely that applicant would
> like consumers to believe the goods
> are very large, and even if they did,
> such an interpretation would not
> negate the misdescriptiveness of the
> mark.

Furthermore, as the Examining Attorney points

out in his brief, it is improper to consider the term

"SUPER SILK" in the abstract:

> Applicant sets forth many more
> definitions of SUPER, but does so with
> disregard to the relationship of the
> mark to the identified goods.  The
> fact that [as a noun] SUPER may mean
> "superintendent of an apartment or
> building" or "a removable upper story
> of a beehive, containing sections for
> the storage of honey" is not
> controlling on the question of
> descriptiveness [or
> misdescriptiveness].  ....  While

11

> there are multiple interpretations of
> the mark that consumers might hold [in
> the abstract, as applied to
> applicant's goods], applicant has not
> shown that any non-misdescriptive
> interpretation is more likely to be
> held by consumers than the most
> straightforward interpretation, [which
> is] that the goods are "excellent,"
> "first-rate," and made of silk.

In addition, with respect to applicant's "alternative hypothesis" that "the mark will be viewed ... [as describing] the goods as 'other than' but 'superior to' silk," the Examining Attorney argues that:

> The applicant's hypothesized
> interpretation of the mark is not
> supported by any of the multiple
> definitions of SUPER it placed in the
> record, and is in fact directly
> contradicted by one of its
> definitions, "exhibiting the
> characteristics of its type to a great
> or excessive degree."  ....

With respect to applicant's reliance on copies of a few third-party registrations for marks which contain the words "SILK," "SUEDE" or "SATIN," the Examining Attorney, citing In re Shapely, Inc., 231 USPQ 72, 75 (TTAB 1986),[5] argues that "even if the Office has

---

[5] The Board, in holding in such case that a stylized form of the mark "SILKEASE," as used in connection with goods specifically identified as "women's blouses and ladies' dresses made of polyester crepe de chine," constituted deceptive matter within the meaning of Section 2(a), by necessary implication also found such mark to be deceptively misdescriptive under Section 2(e)(1).

'perhaps improvidently' issued registrations in the past to 'marks containing the term SILK for goods not made of silk,' the Board would not be bound by those actions if it believes that registration in the case before it would be contrary to the statute." In addition, the Examining Attorney contends that the third-party registrations "are of no guidance in this case because none of the identifications of goods state[s] that the goods are not made of suede or satin, as the case may be." Thus, according to the Examining Attorney, "applicant is reading in limitations on the material composition of the goods in these registrations which are simply not there."

As a starting point for analysis, we observe that in order for a term to misdescribe goods or services, the term must be merely descriptive, rather than suggestive, of a significant aspect of the goods or services which the goods or services plausibly possess but in fact do not.[6] With respect to marks which contain

---

[6] It is well settled, in this respect, that a term is considered to be merely descriptive of goods or services, within the meaning of Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), if it immediately describes an ingredient, quality, characteristic or feature thereof or if it directly conveys information regarding the nature, function, purpose or use of the goods or services. See In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). It is not necessary that a term describe all of the properties or functions of the goods or services in order for it to be considered to be merely descriptive thereof; rather, it is sufficient if the term

the word "super," there have been a number of cases

holding such marks to be either merely descriptive or

suggestive, including:  Quaker State Oil Refining Corp.

v. Quaker Oil Corp., 453 F.2d 1296, 172 USPQ 361, 363

(CCPA 1972) ["SUPER BLEND" held merely descriptive of

"motor oils" as designating "an allegedly superior blend

of oils"]; In re Consolidated Cigar Co., 35 USPQ2d 1290,

1293-94 (TTAB 1995) ["SUPER BUY" found laudatory and

hence merely descriptive of "cigars, pipe tobacco,

---

describes a significant attribute or idea about them.  Moreover,
whether a term is merely descriptive is determined not in the
abstract but in relation to the goods or services for which
registration is sought, the context in which it is being used on
or in connection with those goods or services and the possible
significance that the term would have to the average purchaser
of the goods or services because of the manner of its use.  See
In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979).
Consequently, "[w]hether consumers could guess what the product
[or service] is from consideration of the mark alone is not the
test."  In re American Greetings Corp., 226 USPQ 365, 366 (TTAB
1985).

However, a mark is suggestive if, when the goods or
services are encountered under the mark, a multistage reasoning
process, or the utilization of imagination, thought or
perception, is required in order to determine what attributes of
the goods or services the mark indicates.  See, e.g., In re
Abcor Development Corp., supra at 218, and In re Mayer-Beaton
Corp., 223 USPQ 1347, 1349 (TTAB 1984).  As has often been
stated, there is a thin line of demarcation between a suggestive
mark and a merely descriptive one, with the determination of
which category a mark falls into frequently being a difficult
matter involving a good measure of subjective judgment.  See,
e.g., In re Atavio, 25 USPQ2d 1361 (TTAB 1992) and In re TMS
Corp. of the Americas, 200 USPQ 57, 58 (TTAB 1978).  The
distinction, furthermore, is often made on an intuitive basis
rather than as a result of precisely logical analysis
susceptible of articulation.  See In re George Weston Ltd., 228
USPQ 57, 58 (TTAB 1985).

14

chewing tobacco and snuff" inasmuch as term "ascribes a quality of superior value to the goods," in that they "are an exceptionally high value for their price," and is "an expression of pre-eminence, analogous to a grade designation"]; In re Carter-Wallace, Inc., 222 USPQ 729, 730 (TTAB 1984) ["SUPER GEL" held merely descriptive of a "lathering gel for shaving" because term "would be perceived as nothing more than the name of the goods modified by a laudatory adjective indicating the superior quality of applicant's shaving gel"]; In re Samuel Moore & Co., 195 USPQ 237, 241 (TTAB 1977) ["SUPERHOSE!" found merely descriptive of "hydraulic hose made of synthetic resinous materials" inasmuch as term "would be understood as the name of the goods modified by a laudatory adjective which would be taken to mean that applicant's hose is of superior quality or strength"]; In re Ralston Purina Co., 191 USPQ 237, 238 (TTAB 1976) ["SUPER" in "RALSTON SUPER SLUSH" ("SLUSH" disclaimed) held suggestive of a "concentrate used to make a slush type soft drink" because word "is used as mere puffery ... to connote a vague desirable characteristic or quality"]; In re Allen Electric & Equipment Co., 175 USPQ 176, 177 ["SUPER COLLINEAR" found neither descriptive nor misdescriptive of "base station communication antennas"

15

inasmuch as "an antenna is either collinear or it is not" and thus "one antenna is not more collinear than another nor would it be[,] comparatively, most collinear of three or more such arrays"]; and In re Occidental Petroleum Corp., 167 USPQ 128 (TTAB 1970) ["SUPER IRON" held suggestive of "soil supplements" because "it takes some roundabout reasoning to make a determination ... that the product contains a larger amount of iron than most soil supplements or that this iron ... ingredient ... is superior in quality to iron found in other soil supplements"].

A general proposition which may be distilled from the foregoing cases is that if the word "super" is combined with a word which names the goods or services, or a principal component, grade or size thereof, then the composite term is considered merely descriptive of the goods or services, but if such is not strictly true, then the composite mark is regarded as suggestive of the products or services. Here, joining the laudatory word "super" with the generic fabric name "silk" to form the term "SUPER SILK" results in a composite which plainly has a meaning identical to the meaning which ordinary usage would ascribe to such words in combination. See, e.g., In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d

16

1110, 1111-12 (Fed. Cir. 1987); and In re Consolidated Cigar Co., <u>supra</u> at 1294.

Consequently, when considered in its entirety, the term "SUPER SILK" would in a laudatory fashion immediately describe, without conjecture or speculation, a significant quality, characteristic or feature of any articles of clothing, including dress shirts and sport shirts, made of silk fabric. Purchasers and potential customers for such goods would plainly understand, as asserted by the Examining Attorney, that because shirts, like other items of apparel, are commonly made of silk, the term "SUPER SILK" designates goods made of an excellent, first-rate, or superior grade of silk fabric and not, as suggested by applicant, those produced from "a fabric that is similar but superior *to* silk" (emphasis added). <u>See</u>, <u>e.g.</u>, R. Neumann & Co. v. Overseas Shipments, Inc., 326 F.2d 786, 140 USPQ 276, 279 (CCPA 1964) ["We are unable to subscribe to the reasoning ... that 'DURA-HYDE' would at most merely suggest that appellee's nonleather goods of leatherlike appearance 'are *as* durable *as* leather' (emphasis supplied). The interjection of *as* between 'durable' and 'hide' supplies a distorted connotation"].

However, because applicant's goods are identified as "clothing, namely[,] dress shirts and sport shirts made of silk-like fabric," it is clear that the term "SUPER SILK," which signifies an excellent, first-rate, or superior grade of silk fabric, misdescribes applicant's goods inasmuch as they are not made from silk fabric.  See In re Shapely, Inc., supra at 73 ["There is no question that the presence of the noun 'silk' as a prefix renders the mark SILKEASE misdescriptive of appellant's blouses and dresses which contain no silk fibers"].  Moreover, none of the variety of alternative meanings which applicant asserts for the term "SUPER SILK" in the abstract has any applicability to applicant's goods.  The first prong of the test for a deceptively misdescriptive term is therefore met, especially inasmuch as the record, as noted below, confirms that silk fabrics have several significant properties which are available in various grades or degrees, such that those with superior, excellent or first-rate quality would be viewed as super silk fabrics.

With respect to the second prong of the standard for what constitutes a deceptively misdescriptive term, the record clearly establishes that purchasers and prospective consumers for applicant's goods would be

likely to believe the misrepresentation readily conveyed by the term "SUPER SILK." The Examining Attorney, in this regard, has introduced an article by the International Silk Association (U.S.A.), entitled "What is Silk ...," which in addition to detailing the history of silk fibers, the care of silk fabrics and the types of silk weaves (grouped under the categories of "ROUGH-TEXTURED SILKS," "'RAW' SILKS," "STIFF SILKS," "SOFT SILKS," "CRISP SILKS," "GLOSSY SILKS," "SHEER SILKS" and "VELVETS"), states in pertinent part that:

> *Qualities of Silk* Silks may be woven on any type of loom made, into fabrics of any degree of crispness or softness, thickness or transparency. But all of these fabrics have in common the unique qualities that have made silk the most cherished of materials for 4,000 years. In the first place, they have the beauty that only this most beautiful of fibers can impart, whether they are woven to display all the natural gloss of the silk, or to glow with a soft, diffused lustre. They take dyes with a purity and clarity that makes possible a limitless range of color, from the softest, subtlest neutrals to the most brilliant deep tones. They print superbly; printed silks have clarity and depth to delight an artist. And silks have practical qualities which are unique.

Given the various degrees or grades which the properties of silk fabrics may have, it is indeed plausible, if not

unavoidable, that customers and potential buyers of applicant's dress shirts and sports shirts made of silk-like fabric would believe that such goods, when marketed under the term "SUPER SILK," are made of an excellent, first-rate, or superior grade of genuine silk when, in fact, that is not the case. Accordingly, because both elements of the test for a deceptively misdescriptive term have been satisfied, registration of the term "SUPER SILK" is barred by Section 2(e)(1) of the statute. See, e.g., R. Neumann & Co. v. Overseas Shipments, Inc., supra at 280-81; and In re Shapely, supra at 74-75.

Applicant's contentions to the contrary, based upon its former registration for such term and certain third-party registrations for marks containing the word "silk" or other fabric names, are not persuasive of a different result. Each case must, of course, be decided on its own merits, including the evidentiary record presented, and while uniform treatment under the Trademark Act is desirable, the Board is not bound by prior determinations of Examining Attorneys with respect to registrability. See, e.g., In re Shapely, supra at 75. Moreover, the third-party registrations of marks composed of the terms "SILK," "SUEDE" or "SATIN" are not evidence that marks which contain a fabric name have been

permitted registration where the goods do not contain

that fabric. Rather, such registrations are implicitly

limited, as the subject marks at a minimum would

otherwise be considered deceptively misdescriptive, to

goods which are made from the material named in the mark.

This brings us to consideration of the refusal

under Section 2(a). Having found the term "SUPER SILK,"

for the reasons stated above, to be deceptively

misdescriptive of applicant's "dress shirts and sport

shirts made of silk-like fabric," the determinative issue

for the purpose of whether such term is also

unregistrable as deceptive is whether the misdescription

is likely to affect the decision to purchase the goods.

Applicant, in its brief, appears to essentially concede

the materiality thereof, inasmuch as it notes that a silk

shirt constitutes "a 'premium' garment":

> [T]he Examining Attorney ... has
> stated that "silk shirts are generally
> higher priced than non-silk shirts,"
> "consumers are willing to pay a
> premium for silk shirts," and "whether
> or not applicant's shirts contain silk
> is a material factor to consumers."
> This being said, it follows that
> consumers will exercise a high degree
> of care when purchasing silk shirts.
> A consumer who is taking care to
> purchase a "premium" garment will
> touch the fabric to feel its texture
> and try on the item to ensure a proper
> look, feel and fit before spending a
> "higher price." ....

Although applicant concludes the above-quoted paragraph by asserting that "consumers will not purchase Applicant's shirts with the belief that they contain silk," applicant does not take issue with the Examining Attorney's contention that the presence or absence of silk in articles of apparel, including dress shirts and sport shirts, is a material consideration in a consumer's decision to purchaser such items. In particular, applicant further acknowledges in its brief the desirability, and hence materiality, of whether clothing is made of silk by stating that, "[m]ost importantly, consumers who are looking to purchase a high priced silk garment will check the fiber content of an item to be sure they are getting what they desire."

The Examining Attorney, in his brief, insists that the term "SUPER SILK" is deceptive because, when used in connection with dress shirts and sport shirts made of silk-like fabric, the misrepresentation conveyed by such term "would materially affect the decision to purchase the goods." Specifically, the Examining Attorney states that:

> The excerpts from WHAT IS SILK ...
> give ample testimony to the ancient
> pedigree and desirable qualities of
> silk. That silk shirts are generally
> higher priced than non-silk shirts

shows that consumers regard shirts
made of silk as more desirable.

Applicant, as noted previously, has basically admitted the Examining Attorney's assertions that silk shirts, relative to like articles of clothing made from other fabrics, are "high priced," "premium" garments. Moreover, in addition to the desirable qualities of silk as indicated in the earlier mentioned excerpt from the "What is Silk ..." article by the International Silk Association (U.S.A.), such article further evidences the advantageous properties of silk fabrics as materials from which to make items of apparel:

Silk is the strongest of all
natural fibers.  A filament of silk is
stronger than a like filament of
steel.  Silk is supremely lasting.
The beautiful fabrics remaining to us
from ancient days attest to silk's
almost uncanny resistance to aging.
Silk is elastic.  It will stretch 20%
and more beyond its own length,
without breaking, and return to its
original length.  This elasticity
gives silk fabrics their resistance to
crushing and ripping.  And silk has a
live, friendly feel.  Its insulating
properties give it a cool feel in
Summer, a warm feel in Winter.  Its
absorbency prevents its ever feeling
clammy or damp.

Someone said long ago:  "We are
all Adam's children, but silk makes
the difference."  Today, we say
simply:  "There's nothing like silk."

Given that silk possesses such desirable attributes, it is plain that a term which indicates that shirts or other garments are made of silk is likely to affect the decision to purchase the goods. The term "SUPER SILK," which deceptively misdescribes applicant's dress shirts and sports shirts made of silk-like fabric as believably being made of an excellent, first-rate, or superior grade of real silk, accordingly is also deceptive within the meaning of Section 2(a) of the statute. See, e.g., R. Neumann & Co. v. Overseas Shipments, Inc., supra; In re Shapely, supra at 75; and Tanners' Council of America, Inc. v. Samsonite Corp., 204 USPQ 150, 154 (TTAB 1979) ["SOFTHIDE" for "imitation leather material" held deceptive].

Applicant appears to maintain, however, that any deception imparted by the term "SUPER SILK" to its goods will be precluded by the fact that such goods, when sold, are required by federal law to carry labels setting forth the fiber content of the fabric from which the goods are made. According to applicant's brief:

> The Federal Trade Commission ("FTC") requires that all textile and wool products contain a label listing the fiber content of the fabric. See The Textile Fiber Products Identification Act, 15 U.S.C. §70, et seq. Applicant has been an eminent international manufacturer of various clothing

> products and accessories for over 100
> years and has regularly complied with
> FTC guidelines.  Because consumers
> exercising ordinary care will read
> Applicant's labels and tags, and such
> labels/tags will specify that the
> shirts do not contain silk, there is
> no way consumers will believe the
> shirts are made of silk.  Further,
> Applicant contends that its mark SUPER
> SILK appears on the <u>same</u> label as the
> fabric content.

As support for its contention, applicant relies upon

declarations which it made of record from its president

and a merchandise manager of another apparel firm.  Each

declarant, among other things, states that consumers

"exercise care in purchasing clothing products" and that,

as part of such care, "consumers read the fiber content

of a clothing item before purchasing the particular

item."

Applicant presses the above contention despite

citing, in its brief, In re Budge Manufacturing Co. Inc.,

<u>supra</u> at 1261, which specifically refuted such an

argument by stating, as to advertising and labeling which

indicate the actual fabric content of a product, that

(citation omitted; emphasis in original):

> Misdescriptiveness of a term may be
> negated by its meaning in the context
> of the whole mark inasmuch as the
> combination is seen together and makes
> a unitary impression.  The same is not
> true with respect to explanatory
> statements in advertising or on labels

> which purchasers may or may not note and which may or may not always be provided. The statutory provision bars registration of *a mark* comprising deceptive matter. Congress has said that the advantages of registration may not be extended to a mark which deceives the public. Thus, the mark standing alone must pass muster, for that is what the applicant seeks to register, not extraneous explanatory statements.

That applicant's dress shirts and sports shirts made of silk-like fabric will disclose, when marketed under the term "SUPER SILK," the fact that the fabric from which such goods are manufactured is not genuine silk is accordingly irrelevant and immaterial. See, e.g., R. Neumann & Co. v. Overseas Shipments, Inc., supra at 279; In re Juleigh Jeans Sportswear Inc., 24 USPQ2d 1694, 1699 (TTAB 1992); and In re Shapely, supra at 74-75.

**Decision**: The refusals under Sections 2(e)(1) and 2(a) are affirmed.