**In re LOEW'S THEATRES, INC.**

**Appeal No. 85-888.**

United States Court of Appeals, Federal Circuit.

Aug. 9, 1985.

Robert W. Fiddler, Fiddler & Levine, New York City, argued for appellant.

Henry W. Tarring, II, Associate Sol., U.S. Patent & Trademark Office, Arlington, Va., argued for appellee. With him on the brief were Joseph F. Nakamura, Sol., and Fred D. McKelvey, Deputy Sol., Washington, D.C.

Before BALDWIN, KASHIWA and NIES, Circuit Judges.

NIES, Circuit Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board sustaining a refusal to register the mark DURANGO for chewing tobacco. The board held that the subject mark was unregistrable under § 2(e)(2) of the Lanham Act (15 U.S.C. § 1052(e)(2)), which bars registration of a mark which is "primarily geographically deceptively misdescriptive" of the goods to which it is applied. We affirm.

## I.

### Background

The subject of this appeal is Application Serial No. 341,663, filed on December 14, 1981, in the U.S. Patent and Trademark Office (PTO) by Loew's Theatres, Inc., doing business through its Lorillard Division (hereinafter LTI) for the mark DURANGO for chewing tobacco, claiming use since on or before September 9, 1981. Registration was initially refused on the Principal Register on the grounds that the mark appeared to be either primarily geographically descriptive or deceptively misdescriptive of the goods and was, thus, barred from registration on the Principal Register pursuant to § 2(e) of the Lanham Act.[1] In

---

1. Section 2(e), codified at 15 U.S.C. § 1052(e), provides in pertinent part:

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration

support of this rejection, the examiner relied on information in the Columbia Lippincott Gazetteer of the World, Columbia University Press (1952). The examiner concluded that because the reference disclosed that tobacco was a crop of the Durango, Mexico area,[2] it would be reasonable for the purchasing public to expect chewing tobacco bearing the name DURANGO to have its origin in that area. He advised that additional evidence of registrability could be filed.

LTI sought to overcome this rejection by argument that: (1) LTI's existing Registration No. 923,094 for the mark DURANGOS for cigars on the Principal Register entitled it to registration of the subject mark, and (2) the evidence on which the examiner relied was insufficient to indicate that the purchasing public would make a goods/place association between tobacco and the Durango, Mexico area.

The examining attorney adhered to his rejection and buttressed the record with respect to the geographic significance of the name Durango by reference to the geographical names section of Webster's New Collegiate Dictionary, G. & C. Merriam Company, Springfield, Massachusetts (1979).[3] In view of the substantial popula-

tion of the state and city of Durango in Mexico, he concluded that Durango could not be deemed a "minor, obscure, or remote" geographic place name. Further, the examining attorney believed that the evidence of tobacco production in Durango established a *prima facie* case that there would be a goods/place association by the public, as required for a rejection under § 2(e), citing *In re Nantucket, Inc.*, 677 F.2d 95, 213 USPQ 889 (CCPA 1982). While acknowledging LTI's ownership of the registration for DURANGOS cigars, the examining attorney deemed such evidence insufficient to establish distinctiveness of the mark sought to be registered. He noted the continued absence of any evidence concerning the length and manner of LTI's use of the mark, the nature and extent of advertising, or any other efforts by LTI which would tend to establish that the mark had acquired distinctiveness and thereby entitle LTI to a registration in accordance with § 2(f) (15 U.S.C. § 1052(f) ).[4] Finally, he stated that, since LTI's goods did not come from the place named, the mark was being refused registration as primarily geographically deceptively misdescriptive.

---

on the principal register on account of its nature unless it—

    *    *    *    *    *    *

  (e) [c]onsists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them, or *(2) when applied to the goods of the applicant is primarily geographically descriptive or deceptively misdescriptive of them,* except as indications of regional origin may be registrable under section 4 hereof, or (3) is primarily merely a surname. [Emphasis added.]

No issue is raised here with respect to registrability of the subject mark on the Supplemental Register (15 U.S.C. § 1091).

**2.** The entry for the state of Durango, Mexico reads, in pertinent part:

Agr. highly developed in Nazas R valley and near Durango; grows cotton principally, also wheat, corn, barley, chick-peas, sugar cane, *tobacco*, alfalfa, wine, fruit. Maguey, candelilla wax, and guayule rubber are produced in more arid sections. [Emphasis added.]

Likewise, the entry for the city of Durango, Mexico reads, in pertinent part:

Rail junction; resort; commercial, industrial, lumbering, and agr. center (grain, cotton, sugar cane, *tobacco*, fruit, vegetables, stock). [Emphasis added.]

**3.** The entry for Durango reads as follows:

1. state NW cen Mexico area 42,272, pop. 919,381.

2. city, its * pop. 324,261.

**4.** 15 U.S.C. § 1052(f):

(f) Except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration.

Note that a § 2(e) rejection is not excepted from the benefit of § 2(f).

Appellant did not controvert the statement concerning origin of the goods nor submit any additional evidence tending to establish secondary meaning in the mark sought to be registered. Instead, appeal was taken to the Trademark Trial and Appeal Board (board). In a thorough opinion reported at 223 USPQ 513 (1984), adhered to on reconsideration, the board upheld the examining attorney's refusal of registration. This appeal, pursuant to 15 U.S.C. § 1071, followed.

## II.

### Issues

1. Did the PTO establish a *prima facie* case that the mark DURANGO is primarily geographically deceptively misdescriptive for chewing tobacco within the meaning of § 2(e)?

Since we conclude that a *prima facie* case was proved, the following issue must also be addressed.

2. Is registration, nevertheless, mandated by LTI's ownership of Registration No. 923,094 for the mark DURANGOS for cigars?

## III.

### Analysis

#### A.

■ Under § 2(e)(2) of the Lanham Act, a mark may not be registered on the Principal Register if the mark "when applied to the goods of the applicant is ... primarily geographically deceptively misdescriptive." This provision of the statute was extensively analyzed in the precedential decision *In re Nantucket, Inc.,* 677 F.2d 95, 213 USPQ 889 (CCPA 1982).[5] That case concerned the registrability on the Principal Register of the mark NANTUCKET for shirts not originating in Nantucket, Massachusetts. The PTO had argued to the court in the *Nantucket* case that a *prima facie* case of unregistrability was shown simply by proof that the mark was the name of a geographic place known generally to the public. The court rejected this argument, holding that in order to make a valid rejection under § 2(e), the PTO not only had to establish that the mark was the name of a generally known geographic place, but also that the public would be likely to believe that the goods for which the mark is sought to be registered originate in that place. The latter requirement was held to follow from the statutory language that the descriptiveness or deceptive misdescriptiveness of the mark must be determined as "applied to the goods of the applicant." In this respect the statute reflects the common law principle that a geographic term, used in a fictitious, arbitrary, or fanciful manner, is protectable like any other nondescriptive term. Usage in such manner is not "primarily" as a geographic designation. *See, e.g., National Lead Co. v. Wolfe,* 223 F.2d 195, 105 USPQ 462 (9th Cir.), *cert. denied,* 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. 778, 107 USPQ 362 (1955) (DUTCH and DUTCH BOY for paint); *Hyde Park Clothes, Inc. v. Hyde Park Fashions, Inc.,* 93 USPQ 250 (S.D.N.Y. 1951), *aff'd,* 204 F.2d 223, 97 USPQ 246 (2d Cir.), *cert. denied,* 346 U.S. 827, 74 S.Ct. 46, 98 L.Ed. 351, 99 USPQ 491 (1953) (HYDE PARK for men's suits); *La Touraine Coffee Co. v. Lorraine Coffee Co.,* 157 F.2d 115, 70 USPQ 429 (2d Cir.), *cert. denied,* 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663, 71 USPQ 328 (1946) (LA TOURAINE for coffee); *Schoenfeld Industries, Inc. v. Foster Industries, Inc.,* No. 79 Civ. 4917 (S.D.N.Y. Sept. 28, 1979) (BRITTANIA for jeans).

■ While the above cited precedent requires a goods/place association to support a refusal to register under § 2(e)(2), it does not follow that such association embraces only instances where the place is well-known or noted for the goods, a position which the *Nantucket* applicant, as well as LTI, have urged. The court, in *Nantucket,* did not adopt that position. Rather, our precedent continues to hold that to establish a "primarily geographically de-

---

**5.** The decisions of the Court of Customs and Patent Appeals have been adopted as precedent. *South Corp. v. United States,* 690 F.2d 1368, 215 USPQ 657 (Fed.Cir.1982).

ceptively misdescriptive" bar, the PTO must show only a reasonable basis for concluding that the public is likely to believe the mark identifies the place from which the goods originate and that the goods do not come from there.[6] *Singer Manufacturing Co. v. Birginal-Bigsby Corp.*, 319 F.2d 273, 275, 138 USPQ 63, 65 (CCPA 1963) (AMERICAN BEAUTY for sewing machines of Japanese manufacturer properly refused registration under § 2(e)(2)).

### B.

In support of its finding that more than a *de minimus* segment of the public would reasonably associate chewing tobacco with the city and/or state of Durango, Mexico, the PTO relies on the evidence of record which shows that tobacco is a crop produced and marketed in that area. This finding may only be overturned if clearly erroneous. *Stock Pot Restaurant, Inc. v. Stockpot, Inc.*, 737 F.2d 1576, 1578, 222 USPQ 665, 666 (Fed.Cir.1984).

LTI attacks the sufficiency of the evidence of record on several grounds:

1. The Gazetteer relied upon by the PTO shows that Durango is also the name of towns in Colorado and in Spain. Therefore, per appellant, Durango would not be associated with Mexico's tobacco region of that name.

2. The PTO produced no evidence that the public would actually make the asserted association.

■ Contrary to LTI's position, we conclude that the PTO made a *prima facie* showing of a goods/place association between tobacco and the geographic name Durango. Durango (Mexico) is not an obscure place name to the Mexican population of this country nor to reasonably informed non-Mexicans. The cited Gazetteer shows tobacco to be one in a short list of principal crops of the region.[7] No more can be expected from the PTO in the way of proof. The PTO does not have means to conduct a marketing survey as LTI would require. The practicalities of the limited resources available to the PTO are routinely taken into account in reviewing its administrative action. *Norton v. Curtiss*, 433 F.2d 779, 794, 167 USPQ 532, 544 (CCPA 1970). Accordingly, it was suggested in the *Nantucket* decision that precisely the type of evidence utilized here would establish a *prima facie* case by the PTO. 677 F.2d at 106, 213 USPQ at 898 (Nies, J., concurring). The trademark examining attorney, in prosecuting the subject application, followed those suggestions which have been specifically endorsed by the board in this and other cases. We affirm that a *prima facie* case can be established by the type of evidence of record here where the question concerns the registrability of a geographic name.

Finally, it does not detract from the *prima facie* case made by the PTO that there are a few other uses of Durango as a geographic name, such as Durango, Colorado. The PTO's burden is simply to establish that there is a reasonable predicate for its conclusion that the public would be likely to make the particular goods/place association on which it relies. That there is more than one place bearing the name or that one place is better known than another is not dispositive. The issue is not the fame or exclusivity of the place name, but the likelihood that a particular place will be associated with particular goods. Thus, the mark DURANGO for skis might also be barred (without proof of secondary

---

6. In contrast, if the place is noted for the particular goods, a mark for such goods which do not originate there is likely to be deceptive under § 2(a) and not registrable under any circumstances. *See In re Amerise*, 160 USPQ 68 (TTAB 1969); Germain, *Trademark Registration under §§ 2(a) and 2(e) of the Lanham Act: The Deception Decision*, 44 Fordham L.Rev. 249 (1956), 66 Trademark Reporter 97 (1976).

7. LTI challenged the currentness of the information in the reference but put forth no countering evidence. It also relied on *In re Bavaria St. Pauli Brauerei AG*, 222 USPQ 926 (TTAB 1984) as setting out the most pertinent precedent. Board decisions are, of course, not precedent in this court, but, in any event, the decision turned on the obscurity of the geographic name Jever to U.S. purchasers.

meaning) if it were shown that Durango, Colorado, is a ski resort.

We conclude that, on the record here, the findings underlying the *prima facie* case that DURANGO for tobacco falls within the proscription of § 2(e)(2) are not clearly erroneous.

### C.

In rejecting the subject application, the trademark examining attorney followed a two-step examination process, first, determining whether the mark applied for came within the bar of § 2(e) and, second, evaluating whether the applicant had overcome it with evidence of distinctiveness in accordance with § 2(f).

LTI argues that, as the owner of an "incontestible" registration for virtually the identical mark for closely related goods, i.e., DURANGOS for cigars, registration of the subject mark is mandated. Since LTI's existing registration and exclusive right to use the registered mark cannot be challenged under § 2(e)(2) as misdescriptive,[8] LTI reasons that its application for DURANGO for chewing tobacco is also not subject to question on that ground. Support for this analysis is purportedly found in the recent decision of the Supreme Court in *Park 'N Fly v. Dollar Park and Fly, Inc.,* — U.S. —, 105 S.Ct. 658, 83 L.Ed.2d 582, 224 USPQ 327 (1985).

In the *Park 'N Fly* case, an attack based on the alleged descriptiveness of a registered mark was declared to be contrary to the "incontestability" rights which had accrued to the registrant upon compliance with the relevant conditions of the statute after registration. LTI argues that the subject refusal of registration is a compa-rable attack on LTI's rights arising from its existing registration and that the board's holding must, therefore, be overturned. We disagree. LTI's existing rights arising from its registration of DURANGOS for cigars are unaffected by the ruling with respect to the subject application. Thus, the PTO's action here is not constrained by the *Park 'N Fly* decision.

The basic flaw in LTI's analysis is that each application for registration of a mark for particular goods must be separately evaluated. Nothing in the statute provides a right *ipso facto* to register a mark for additional goods when items are added to a company's line or substituted for other goods covered by a registration. Nor do the PTO rules afford any greater rights. Under Rule 2.41(b), in appropriate cases, a prior registration on the Principal Register for the same mark "may" be accepted as "evidence" of distinctiveness, but the same rule reserves to the PTO discretion to require additional proof.[9] The examining attorney and the board considered LTI's registration but were unpersuaded as to the sufficiency of this proof alone in view of the absence of any evidence concerning the extent of actual usage. LTI was unable or unwilling to supply *any* additional evidence to support a claim of distinctiveness.

The issue of acquired distinctiveness is a question of fact. *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.,* 305 U.S. 315, 322, 59 S.Ct. 191, 194, 83 L.Ed. 195, 39 USPQ 402, 404 (1938); *In re Seats, Inc.,* 757 F.2d 274, 278, 225 USPQ 364, 368 (Fed.Cir.1985); *Levi Strauss & Co. v. Genesco, Inc.,* 742 F.2d 1401, 1405, 222 USPQ 939, 942 (Fed.Cir.1984); *Peter-*

---

8. Under § 14 (15 U.S.C. § 1064), a petition to cancel a registration must be filed within five years from the date of registration with, however, a number of excepted grounds, not including § 2(e). Under § 15 (15 U.S.C. § 1065), upon compliance with certain additional conditions, the registrant's right to use becomes incontestable, again, with exceptions. Although no copy of Registration No. 923,094 or of the file for that registration appears in the appendix supplied to the court, or in the file for the subject application, we will assume for purposes of this analysis that LTI is entitled to all benefits of "incontestability" arising from that registration.

9. 37 C.F.R. § 2.41(b) provides, in pertinent part:

(b) In appropriate cases, ownership of one or more prior registrations on the Principal Register or under the Act of 1905 of the same mark may be accepted as prima facie evidence of distinctiveness.... [H]owever, further evidence may be required.

*sen Mfg. Co. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1550–51, 222 USPQ 562, 569–70 (Fed.Cir.1984); *Clinton Detergent Co. v. Proctor & Gamble Co.,* 302 F.2d 745, 748, 133 USPQ 520, 523 (CCPA 1962); *In re Hollywood Brands, Inc.,* 214 F.2d 139, 140, 102 USPQ 294, 295 (CCPA 1954); and 1 J. McCarthy, *Trademarks and Unfair Competition* § 15:10B, at 683–84 (2d ed. 1984). We can not say that a requirement for some additional evidence was unduly burdensome or unreasonable or that the finding that distinctiveness was not established is clearly erroneous.

## IV.

The trademark examining attorney acted entirely in accordance with the statute, the PTO rules, and precedent of this court in his refusal to register DURANGO for chewing tobacco on the record of this case. For the foregoing reasons, the decision of the Trademark Trial and Appeal Board upholding the rejection under § 2(e)(2) is *affirmed.*

AFFIRMED.