**In re BUDGE MANUFACTURING CO., INC.**

**Appeal No. 87–1541.**

United States Court of Appeals, Federal Circuit.

Sept. 21, 1988.

Eugene E. Renz, Jr., Eugene E. Renz, Jr., P.C., Media, Pa., argued for appellant. With him on the brief was John S. Munday.

Albin F. Drost, Asst. Sol., Com'r of Patents and Trademarks, Arlington, Va., argued for appellee. With him on the brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Solicitor.

Before NIES and BISSELL, Circuit Judges, and NICHOLS, Senior Circuit Judge.

NIES, Circuit Judge.

Budge Manufacturing Co., Inc., appeals from the final decision of the United States Trademark Trial and Appeal Board refusing registration of LOVEE LAMB for "automotive seat covers," application Serial No. 507,974 filed November 9, 1984. The basis for rejection is that the term LAMB is deceptive matter within the meaning of section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a) (1982), as applied to Budge's goods which are made wholly from synthetic fibers. We affirm.

### Opinion

Section 2(a) of the Lanham Act bars registration of a mark which: "Consists of or comprises ... deceptive ... matter...." As stated in *In re Automatic Radio Mfg. Co.*, 404 F.2d 1391, 1396, 160 USPQ 233, 236 (CCPA 1969): "The proscription [of section 2(a)] is not against misdescriptive terms unless they are also deceptive." Thus, that a mark or part of a mark may be inapt or misdescriptive as applied to an

applicant's goods does not make it "deceptive." *Id.* (AUTOMATIC RADIO not a deceptive mark for air conditioners, ignition systems, and antennas). Recognizing that premise, the Trademark Trial and Appeal Board has sought to articulate a standard by which "deceptive matter" under section 2(a) can be judged. In this case, the board applied the three-part test which was stated in *In re Shapely, Inc.*, 231 USPQ 72, 73 (TTAB 1986): (1) whether the term is misdescriptive as applied to the goods, (2) if so, whether anyone would be likely to believe the misrepresentation, and (3) whether the misrepresentation would materially affect a potential purchaser's decision to buy the goods.

Budge argues that the board was bound to follow the standard articulated in *In re Simmons, Inc.*, 192 USPQ 331 (TTAB 1976). Per Budge, *Simmons* sets forth a different standard in that it requires as a minimum that "the mark convey some information, upon which an intended customer may reasonably rely, concerning something about the character, quality, function, composition or use of the goods to induce the purchase thereof, but which information, in fact, is misleadingly false." *Id.* at 332.

The standard applied by the board for determining deceptive matter in section 2(a) cases has not been uniformly articulated in some material respects. For example, in at least one opinion an *intent* to mislead was required to establish section 2(a) deceptiveness. *See Steinberg Bros., Inc. v. Middletown Rubber Corp.*, 137 USPQ 319, 321 (TTAB 1963). However, while phrased differently, we discern no material difference between the standard set forth in *Shapely* and that in *Simmons*. Budge points to no substantive difference and, indeed, merely quarrels over the different result here from that in *Simmons*. Thus, we need not address the question of the extent to which

panels of the board are required to follow prior decisions of other board panels.[1]

 What is more significant, in any event, is that this court is bound only by its own precedent, none of which Budge discusses. Although we will give deference in appropriate circumstances to a board's decision on a question of law, we are, of course, not bound by such rulings. *See, e.g., In re Dr. Pepper Co.*, 836 F.2d 508, 510, 5 USPQ2d 1207, 1209 (Fed.Cir.1987). Where the issue relates to deceptive misdescriptiveness within the meaning of 2(a), we are in general agreement with the standard set out by the board in *Shapely*, with the following amplification in part drawn from *Simmons:*

(1) Is the term misdescriptive of the character, quality, function, composition or use of the goods?

(2) If so, are prospective purchasers likely to believe that the misdescription actually describes the goods?

(3) If so, is the misdescription likely to affect the decision to purchase?

 In *ex parte* prosecution, the burden is initially on the Patent and Trademark Office (PTO) to put forth sufficient evidence that the mark for which registration is sought meets the above criteria of unregistrability. Mindful that the PTO has limited facilities for acquiring evidence—it cannot, for example, be expected to conduct a survey of the marketplace or obtain consumer affidavits[2]—we conclude that the evidence of record here is sufficient to establish a *prima facie* case of deceptiveness. That evidence shows with respect to the three-pronged test:

(1) Budge admits that its seat covers are not made from lamb or sheep products. Thus, the term LAMB is misdescriptive of its goods.

(2) Seat covers for various vehicles can be and are made from natural lambskin and sheepskin. Applicant itself makes

---

1. While it is a principal assertion in Budge's brief that a panel of the board is required to follow board "precedent," Budge cites no authority which even suggests such requirement at the trial level.

2. *See, e.g., In re Loew's Theatres, Inc.*, 769 F.2d 764, 768, 226 USPQ 865, 868 (Fed.Cir.1985) ("The practicalities of the limited resources available to the PTO are routinely taken into account in reviewing its administrative action.").

automobile seat covers of natural sheepskin. Lambskin is defined, *inter alia*, as fine-grade sheep skin. *See Webster's Third New International Dictionary* 639 (unabr. 1976). The board's factual inference is reasonable that purchasers are likely to believe automobile seat covers denominated by the term LAMB or SHEEP are actually made from natural sheep or lamb skins.

(3) Evidence of record shows that natural sheepskin and lambskin is more expensive than simulated skins and that natural and synthetic skins have different characteristics. Thus, the misrepresentation is likely to affect the decision to purchase.

Faced with this *prima facie* case against registration, Budge had the burden to come forward with countering evidence to overcome the rejection. It wholly failed to do so.

■ Budge argues that its use of LAMB as part of its mark is not misdescriptive when considered in connection with the text in its advertising, which states that the cover is of "simulated sheepskin." [3] Some, but not all, of Budge's specimen labels also have this text. This evidence is unpersuasive. In *R. Neumann & Co. v. Overseas Shipments, Inc.*, 326 F.2d 786, 51 CCPA 946, 140 USPQ 276 (1964), a similar argument was made that the mark DURA–HYDE on shoes was not deceptive as an indication of leather because of tags affixed to the shoes proclaiming the legend "Outwears leather." In discounting the evidence, the court stated: "The legends constitute advertisement material separate and apart from any trademark significance." *Id.* at 790, 51 CCPA at 951, 140 USPQ at 279. To the same effect is *In re Bonide Chemical Co.*, 46 F.2d 705, 18 CCPA 909, 8 USPQ 297 (1931). There the court held, with respect to a clarifying statement made in advertising circulars, which the applicant urged negated the deceptive nature of the mark, "This argument is beside the issue. It is the word of the mark, not the statement of an advertising circular which appellant seeks to register...." *Id.* at 708, 18 CCPA at 913, 8 USPQ at 300.

■ Thus, we conclude that the board properly discounted Budge's advertising and labeling which indicate the actual fabric content. Misdescriptiveness of a term may be negated by its meaning in the context of the whole mark inasmuch as the combination is seen together and makes a unitary impression. *A.F. Gallun & Sons Corp. v. Aristocrat Leather Prods., Inc.*, 135 USPQ 459, 460 (TTAB 1962) (COPY CALF not misdescriptive, but rather suggests *imitation* of calf skin). The same is not true with respect to explanatory statements in advertising or on labels which purchasers may or may not note and which may or may not always be provided. The statutory provision bars registration of *a mark* comprising deceptive matter. Congress has said that the advantages of registration may not be extended to a mark which deceives the public. Thus, the mark standing alone must pass muster, for that is what the applicant seeks to register, not extraneous explanatory statements.

■ Budge next argues that no reasonable purchaser would expect to purchase lambskin automobile seat covers because none made of lambskin are on the market. Only sheepskin automobile seat covers are being made, per Budge. Not only was no evidence submitted on the point Budge seeks to make, only statements of Budge's attorney, but also the argument is without substance. The board properly equated sheepskin and lambskin based on the dictionary definition which indicates that the terms may be used interchangeably. In addition, while Budge would discount the evidence presented that bicycle and airline seat coverings are made of lambskin, we conclude that it does support the board's finding that there is nothing incongruous about automobile seat covers being made from lambskin. We also agree with the board's conclusion that any differences be-

---

**3.** During board proceedings, Budge offered an amendment to change the goods in its application to read "simulated sheepskin automotive seat covers." Either way the goods are specified, our opinion remains the same.

tween sheepskin and lambskin would not be readily apparent to potential purchasers of automobile seat covers. The board's finding here that purchasers are likely to believe the misrepresentation is not clearly erroneous.

To overturn the board's finding that misdescribing synthetic fabric as "lamb" would affect a purchaser's decision to purchase the item, Budge merely reiterates its argument that its advertising negates the possibility of misdescriptiveness. We find that argument no more persuasive in this context than previously and, in any event, wholly unresponsive to this issue.

■■■ Finally, we note the evidence of Budge's extensive sales since 1974 under the mark. However, it is too well established for argument that a mark which includes deceptive matter is barred from registration and cannot acquire distinctiveness. *See R. Neumann & Co.*, 326 F.2d at 788, 51 CCPA at 949, 140 USPQ at 278, and cases cited therein, principally *Worden v. California Fig Syrup Co.*, 187 U.S. 516, 23 S.Ct. 161, 47 L.Ed. 282 (1903).

### Conclusion

None of the facts found by the board have been shown to be clearly erroneous nor has the board erred as a matter of law. Accordingly, we affirm the board's decision that Budge's mark LOVEE LAMB for automobile seat covers made from synthetic fibers is deceptive within the meaning of 15 U.S.C. § 1052(a) and is, thus, barred from registration.

AFFIRMED.

NICHOLS, Senior Circuit Judge, concurring.

I agree that the TTAB decision should be affirmed, and with most of what the court well says. There is one matter, however, as to which I do not wholly agree, much as I respect the court's expertise in this field.

We have an unfortunate tendency to believe we must always utter the last word and lay down the ultimate law on all the subjects confided to us. Here we have a TTAB decision with which we find nothing wrong, and two previous TTAB decisions dealing with the same general subject. That is, all three are concerned with the Lanham Act provision barring from registration, trademarks which are "deceptive," and in all three the alleged deception was words making it appear that material actually of synthetic fibers was natural. The task consisted of applying one word in a statute to the few words or single word of a trademark, in light of the actual composition as acknowledged by the applicant. Lawyers are ostensibly, and I hope often actually, trained to construe statutes and other written words according to the intent of those who utter them and the understanding of those who read them. The task in the three cases was one for lawyers, and the three opinions afford internal evidence that the TTAB suffers no shortage of those who know how to do it well. They do not need us to tell them how to do it. If we do so, we clamp down a rigid formula for them to conform to, with a prospect of their being harried by lawyers for alleged nonconformity to the formula forever thereafter, with the simple ultimate issue forgotten.

No one can tell what future cases will bring or whether our formula will aid the solution of future cases, or hinder it. *In re Simmons, Inc.*, one of our three cases, well illustrates my point. The mark: "White Sable" for paint brush bristles, is construed in light of the fact that the animal, sable, is extremely dark and that is so well known that "sable" as an adjective, serves as a synonym for black, as in "sable plumage." As the white sable is a fictitious animal, the mark "white sable" cannot deceptively represent that the hairs in the brush came from a real animal. Who could prescribe beforehand how to deal with such a case? To deal with it after it arose, by an unhampered board, was no trick at all.

In the case before us, the board asked itself: "is anyone likely to believe the product is made of lamb or sheepskin?" The question might, perhaps ideally, be "is any reasonable person * * *" because unreasonable persons are likely to believe anything. It is clearly what the board meant. This court transforms that question in its formula to this:

If so, are prospective purchasers likely to believe that the misdescription actually describes the goods?

Thus "anyone," a single individual, is transmuted into a class of persons. I readily can picture the fun future counsel will have with this. They can demand that the board, with its limited investigative facilities as we acknowledge, first define who are the prospective purchasers, old, young, Ph.D's, illiterates, etc.? Then, what are their tastes, their intellectual quirks, their degree of gullibility?

A simple issue, mostly or wholly of law, is transmuted into a wide-ranging factual inquiry. Is the board to indulge in guesswork and speculation as to this supposititious class, and its *mores?* We reprehended this approach in a recent "likelihood of confusion" case, *Amalgamated v. Amalgamated,* 842 F.2d 1270, 6 USPQ2d 1305 (Fed.Cir.1988); (*cf. B.V.D. Licensing Corp. v. Body Action Design, Inc.,* 846 F.2d 727, 6 USPQ2d 1719 (Fed.Cir.1988)). Is it to conduct a sweeping inquest, the process known outside the Beltway as "making a federal case out of it." Far better, it seems to me, is not to fix anything when nothing is broke.