THIS OPINION IS A
PRECEDENT OF
THE TTAB

Oral Hearing:  July 9, 2008

Mailed: September 26, 2008

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————

**Trademark Trial and Appeal Board**
————

In re MC MC S.r.l.

Application No. 79022561
————

G. Franklin Rothwell and Anne M. Sterba (on brief and appearing at oral hearing) of Rothwell, Figg, Ernst & Manbeck, P.C. for MC MC S.r.l.

Attiya Malik, Examining Attorney, Law Office 112 (Angela Wilson, Managing Attorney).
————

**Before Kuhlke, Wellington, and Ritchie de Larena, Administrative Trademark Judges.**

**Opinion by Wellington, Administrative Trademark Judge:**

On August 25, 2005, MC MC S.r.l., an Italian corporation, filed an application to register the mark MARIA CALLAS (in standard character format) on the Principal Register for goods ultimately identified as "precious metals and their alloys, namely, gold, silver, platinum; goods made of or coated with gold, silver, platinum, namely, necklaces, rings, bracelets, brooches; jewelry; precious stones; horological and chronometric instruments" in International

Class 14.[1]  The application contains a statement that the mark does not identify a living individual.

The trademark examining attorney refused registration under Section 2(a) of the Trademark Act, 15 U.S.C. §1052(a), on the ground that applicant's mark falsely suggests a connection with, as stated in her brief, "Maria Callas, the famous, deceased opera singer, her heirs and/or her estate."[2]

Applicant appealed.  Both applicant and the examining attorney have filed briefs.  An oral hearing was scheduled and took place on July 9, 2008.

Trademark Act Section 2(a) states, in relevant part, that "[n]o trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it — (a) consists of or comprises...matter which may disparage or falsely suggest a connection with persons living or dead, institutions, beliefs, or national symbols, or bring them into contempt or disrepute."

For over twenty years, and following our principal reviewing court's decision in *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., Inc.*, 703 F.2d 1372,

---

[1] Application Serial No. 79022561, seeking extension of protection of a foreign registration pursuant to Trademark Act § 66(a).

[2] Maria Callas died on September 16, 1977.

217 USPQ 505 (Fed. Cir. 1983), *aff'g* 213 USPQ 594 (TTAB

1982), the Board has utilized a four-part test to determine

whether a false suggestion of a connection under Trademark

Act Section 2(a) has been established.  As applied in *ex*

*parte* proceedings, the test is articulated as follows:

> 1) that the marks are the same as, or a close
> approximation of, the name or identity previously
> used by the other person; 2) that the marks would
> be recognized as such, in that they point uniquely
> and unmistakably to that person; 3) that the
> person named by the marks is not connected with
> the activities performed by applicant under the
> marks; and 4) that the prior user's name or
> identity is of sufficient fame or reputation that
> a connection with such person would be presumed
> when applicant's marks are used on applicant's
> goods.

In re Wielinski, 49 USPQ2d 1754, 1757 (TTAB 1998).  *See* also

*In re White*, 80 USPQ2d 1654 (TTAB 2006) and *In re Sloppy*

*Joe's Int'l Inc.*, 43 USPQ2d 1350 (TTAB 1997).

> The examining attorney argues that:

> (1) the name in the proposed mark, MARIA CALLAS, is the
> same as the name of the famous, deceased opera singer
> Maria Callas, (2) the proposed mark would be recognized
> as being the same as that of the singer Maria Callas,
> (3) no one associated with the deceased singer Maria
> Callas, her heirs and/or her estate is connected with
> the goods sold by applicant, and (4) the fame and
> reputation of the singer Maria Callas is such that
> consumers of applicant's goods will presume a
> connection between her and the applicant's goods.

Brief, (unnumbered) p. 4.

> The examining attorney attached evidence to her Office

Actions to support these assertions.

Applicant, on the other hand, argues that its mark does not falsely suggest a connection with the singer Maria Callas because there is no estate vested with rights to control use of her name or persona.  Brief, p. 3.  Specifically, applicant so contends "because the cumulative evidence of record establishes that the rights of privacy and publicity in the name 'Maria Callas' have extinguished with the death of the opera singer in 1977 and her legal heirs thereafter."  *Id.*, p. 4.  That being so, applicant argues that the test for false suggestion of a connection "has limited applicability in an *ex parte* proceeding where the existence of a cognizable right of privacy and publicity in the name 'Maria Callas' is in question."  Brief, p. 9.

Applicant further argues that it is affiliated with the International Maria Callas Cultural Association (IMCCA), which is "now widely recognized as the legitimate source of memorabilia and information on Maria Callas."  *Id.* at p. 10.  According to applicant, it "works closely" with IMCCA and "has been licensed by [IMCCA] to register and use the trademark MARIA CALLAS on goods in International Class 14."  *Id.* at p. 11.  Applicant thus concludes that if use of its mark "could be said to falsely suggest a connection with the [IMCCA], that possibility has also been negated."

Applicant submitted evidence in support of these arguments, including the declaration of IMCCA's president.[3]

In response to applicant's arguments that there is no successor-in-interest to the rights once held by Ms. Callas in her name and/ or persona, the examining attorney argues that the evidence she has submitted indicates there is an estate of Maria Callas "which appears to authorize releases and re-releases of Maria Callas' intellectual property, including her music." Brief, (unnumbered) p. 9. She also argues that "there is evidence of a Greek law firm that claims to represent clients in the entertainment industry, including the estate of Maria Callas." Id., (unnumbered) p. 10. The examining attorney points out that "the requirements for establishing a Section 2(a) claim do not mandate that the Office prove beyond any doubt that there currently exists heirs and/or an estate of Maria Callas to protect her rights." Id., (unnumbered) p. 15. She also discounts applicant's reliance on its relationship with IMCCA because "there is nothing in the record to show that [IMCCA] has been granted the authority...to adopt, register and license the name 'Maria Callas'," and the name of the

---

[3] Applicant attached previously unsubmitted materials to its brief. The examining attorney's objection to these materials is well-taken and the untimely materials have not been considered. Rule 2.142(d).

5

grantee or licensee in the agreement differs, albeit slightly, from applicant's.  Id., (unnumbered) p. 17.

Applicant's argument that there is currently no one with rights in the name or persona of Maria Callas, and the examining attorney's argument in response thereto, presents an issue that has been addressed, in part, by the Board in the context of a corporate entity.  In *In re Wielinski*, the examining attorney responsible handling that case argued that applicant's marks falsely suggested a connection with the defunct Diamond T Truck Company despite applicant's argument and evidence suggesting that there was no successor-in-interest or holder of rights in the name Diamond T Truck Company.  In reversing the refusal, the Board stated:

> A natural person's right to the use of a
> designation which points uniquely to his or her
> persona may not be protected under Section 2(a)
> after his or her death unless heirs or other
> successors are entitled to assert that right.
> [citations omitted].  The person with whom the
> marks are said to falsely suggest a connection
> must have rights in its name or identity which are
> prior to those of the applicant [citation
> omitted].  In order to possess rights, such
> person, or someone to whom those rights have been
> transferred, must exist.

*In re Wielinski*, 49 USPQ2d at 1758

Thus, in that case there was evidence in the record that the entity no longer existed and no evidence to suggest that "anyone else is entitled to assert the right of that defunct business."  *Id*.  The Board further stated that "in the

6

absence of evidence that some person or ongoing business is the successor-in-interest to the Diamond T Motor Truck Company, whatever rights it had under Section 2(a) were extinguished when Diamond T Motor Truck Company ceased to exist." *Id.*

In this case, the fact that the entity was a person does not present a different issue. Therefore, we must determine as a threshold matter in element one whether the "other person" exists.[4] Specifically, we must find whether or not there is someone (this may be a natural person, estate, or juristic entity) with rights in the name "Maria Callas."[5] Similar to *In re Wielinski*, we find that

---

[4] To be clear, the question is not whether Section 2(a) protects rights in the name or persona of a deceased individual as the statutory language expressly states that such rights may be protected. See also, *In re Sloppy Joe's International Inc.*, 43 USPQ2d 1350 (TTAB 1997). The question presented herein is also different from whether applicant's mark points uniquely to the name or persona being protected. The Federal Circuit has made it clear that such a nexus must exist. *University of Notre Dame du Lac*, 703 F.2d at 1377 ["the initial and critical requirement is that the name (or an equivalent thereof) claimed to be appropriated by another must be unmistakably associated with a particular personality or 'persona,'" (finding that NOTRE DAME is a name not solely associated with the University, but identifies a famous religious figure and is used in the names of churches dedicated to that religious figure).]

[5] Again, for sake of clarity, the "rights" to which the Board references in this decision are those contemplated by Section 2(a). Our primary reviewing court and the Board have determined that Section 2(a) emanates from a desire to protect "one's right of privacy, or the related right of publicity." *University of Notre Dame du Lac*, 703 F.2d 1372, 217 USPQ at 509; see also, *Buffett v. Chi-Chi's, Inc.*, 226 USPQ 428, 429 (TTAB 1985) ("that portion of Section 2(a) respecting the 'false suggestion of a connection' evolved out of, and embraced, the then nascent concepts of the rights of privacy and publicity," referencing the findings of the Federal Circuit in *University of Notre Dame du Lac*). Moreover, there is no overriding public interest to protect. "The rights protected under the § 2(a) false suggestion

applicant has rebutted the examining attorney's prima facie case under Section 2(a) by presenting evidence that no such entity exists. Unlike *In re Wielinski*, as noted above, the examining attorney has responded with evidence to support her position that "heirs or successors" with rights in the name and/or person actually do exist.

Based on the evidence of record, we have doubt as to whether there is any successor in interest entitled to assert rights, as contemplated under Section 2(a), to the Maria Callas name or persona. In other words, it is unclear whether the rights that Ms. Callas once possessed in her name or persona devolved to anyone. The record is replete with contradictory information on this point. Without reiterating in detail all of the materials submitted, we note that the examining attorney's evidence essentially references an entity that, in her words, "appears to authorize releases and re-leases" of Ms. Callas' recordings. She also submitted evidence concerning a Greek law firm that purportedly represents an estate of Maria Callas. Applicant, on the other hand, has submitted evidence indicating that there is no such person or entity in existence asserting enforceable rights in the name MARIA

---

provision are not designed primarily to protect the public, but to protect persons and institutions from exploitation of their persona." *Bridgestone/Firestone Research, Inc. v. Automobile Club De L'Quest De La France*, 245 F.3d 1359 (Fed. Cir. 2001).

CALLAS that would prevent applicant from registering its mark under Section 2(a). This evidence includes a sworn affidavit from a Greek investigator who avers that he has "repeatedly conducted investigations" and ultimately concludes that "there is no 'heir' of Maria [C]allas who is in the position to enforce the legal rights concerning a potential offence of Maria [C]allas personality."[6] Applicant also submitted the declaration of Mr. Bruno Tosi, the President of IMCCA, who affirms that "there don't appear to be any living heirs of Maria Callas or any persons that may claim rights in the name 'Maria Callas'."[7] Applicant has also submitted evidence to support its position that, to the extent there are enforceable rights in the MARIA CALLAS name, one possible owner of these rights would be IMCCA, with which applicant has some affiliation. Ultimately, after evaluating all of the evidence, significant doubt remains as to whether there is a successor in interest to Maria Callas' rights in her name or persona.

The burden is on the examining attorney (representing the Trademark Office) to establish that applicant's mark falsely suggests a connection with the name or persona. See *In re Pacer Technology*, 338 F.3d 1348, 67 USPQ2d 1629 (Fed.

---

[6] Pages 2-3 of Sworn declaration of Konstantinos Dimitrios (attached as Exhibit A to applicant's January 31, 2007 response).
[7] Declaration attached to applicant's request for reconsideration (filed on October 10, 2007).

Cir. 2003), and cases cited therein; and In re Budge Mfg. Co. Inc., 857 F.2d 773, 8 USPQ2d 1259 (Fed. Cir. 1988). Where contradictions in the evidence raise significant doubt as to whether the examining attorney has established the elements of false suggestion of a connection, such doubt should be resolved in applicant's favor. *In re* White, 73 USPQ2d 1713, 1722 (TTAB 2004); see also, *In re In Over Our Heads Inc.*, 16 USPQ2d 1653, 1655 (TTAB 1990). Resolving in applicant's favor significant doubts about whether there exists a successor to the rights in a name or persona removes the possibility that we might be denying registration to an applicant based on non-existent rights. As the Board noted in *Wielinski*, while "[t]here could be someone who stands in the shoes of the former [holder of rights in the name or persona], "it is not up to the examining attorney to assert whatever rights such an unknown entity might possess. This is one of the purposes of the opposition [or cancellation] procedure." Wielinski at 1758. In this regard, we further note that a Section 2(a) claim is not time barred under Section 14 of the Trademark Act; thus, any person or entity alleging rights in the name or persona will have recourse.

In view of the significant doubt remaining as to whether anyone currently possesses rights in the name "Maria Callas," and resolving such doubt in applicant's favor, we

10

find that the examining attorney has not met her burden in establishing the false suggestion of a connection refusal under Section 2(a).

   **Decision***:*  The refusal to register under Trademark Act § 2(a) is reversed.