**THIS OPINION IS A PRECEDENT
OF
THE T.T.A.B.**

Mailed:  July 26, 2012

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re E5 LLC
_____

Serial No. 77795412

_____

James C. Wray Esq., for E5 LLC.

Andrew Leaser, Trademark Examining Attorney, Law Office 112 (Angela Bishop Wilson, Managing Attorney).

_____

Before Seeherman, Ritchie, and Greenbaum, Administrative Trademark Judges.

Opinion by Ritchie, Administrative Trademark Judge:

E5 LLC ("applicant") filed an application to register on the Principal Register the mark shown below for goods, as amended, listed as "dietary supplements, namely, lipoic acid, vitamin C, ascorbic acid, zinc, zinc amino acid chelate, riboflavin, biotin, vanadium, vanadium sulfate," in International Class 5[1]:

_____

[1] Application Serial No. 77795412 was filed on August 3, 2009, with a Statement of Use later entered, amending the application to one made pursuant to 15 U.S.C. § 1052(a), alleging dates of first use and first use in commerce on August 21, 2009.

α cu

The application includes the description: "The mark consists of the alpha symbol and the letters 'CU'."

The examining attorney refused registration of the application under Section 2(a) of the Trademark Act of 1946, 15 U.S.C. § 1052(a), on the ground that the mark sought to be registered is deceptive of a feature or ingredient of the identified goods. The examining attorney alternatively refused registration pursuant to Section Section 6(a) of the Trademark Act, 15 U.S.C. § 1056(a), on the ground that the term "CU" in the mark is deceptively misdescriptive under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), and must be disclaimed.

When the refusals were made final, applicant filed an appeal. Applicant and the examining attorney each filed briefs, and applicant filed a reply brief.

In accordance with Section 2(a) of the Trademark Act, registration must be refused if a mark is deceptive of a feature or an ingredient of a mark. The examining attorney contends, specifically, that the term "CU" in applicant's mark would be understood by consumers to refer to the chemical element "copper," which is not in fact included in

applicant's "dietary supplements, namely, lipoic acid, vitamin C, ascorbic acid, zinc, zinc amino acid chelate, riboflavin, biotin, vanadium, vanadium sulfate."

The U.S. Patent and Trademark Office has the initial burden of putting forth a prima facie case that a trademark falls within the prohibition of Section 2(a). *In re Budge*, 857 F.2d 773, 8 USPQ2d 1259, 1260 (Fed. Cir. 1988) (LOVEE LAMB deceptive for "automotive seat covers"). The test is: 1) whether the mark misdescribes the goods; 2) if so, whether consumers would be likely to believe the misrepresentation; and 3) whether the misrepresentation would materially affect potential purchasers' decision to purchase the product. *Id.* at 1260.

In looking at the first element, we must decide whether the term "CU" misdescribes the goods for which applicant seeks registration. There are essentially three parts to the examining attorney's argument. First, the examining attorney asserts that the term "CU" is a separate element in the mark. Second, the examining attorney asserts that consumers will understand the term "CU" to refer to the chemical element copper. And finally, the examining attorney asserts that copper is not included in applicant's "dietary supplements, namely, lipoic acid,

3

vitamin C, ascorbic acid, zinc, zinc amino acid chelate, riboflavin, biotin, vanadium, vanadium sulfate."

In its brief, applicant does not dispute the first assertion made by the examining attorney. Further, we agree that in analyzing the mark, it is not a unitary mark.[2] Rather, the term "CU" would be recognized by consumers as a separate element from the alpha symbol, which stands a space apart:

$$\alpha \; \text{cu}$$

As for the examining attorney's third assertion, applicant does not deny that its goods do not contain copper. (appl's brief at 5).

However, applicant takes issue with the examining attorney's assertion that consumers will understand the term "CU" to refer to the chemical element copper. Applicant, rather, argues that "CU" is not an acronym or abbreviation for copper. Applicant acknowledges that "Cu" with a lowercase "u" is used to represent copper on the periodic table. (appl's brief at 4). However, applicant argues that "CU" in all uppercase letters would not

---

[2] In its November 29, 2010 Response to Office Action, applicant argued that the mark is unitary, but it did not maintain the argument in its brief.

likewise be understood by consumers to refer to copper.

*Id.*

We are not persuaded by applicant's argument. The examining attorney submitted over a dozen references showing that "CU," in all capital letters, is used to refer to the element copper.

**What does CU stand for?: Copper** (Cuprum). *www.acronymfinder.com. Attached to May 29, 2010 Office Action, p2.*

**copper (CU)** ports: Contemporary Controls, Inc. *www.opensystemsproducts.com. Attached to June 30, 2011 Office Action, p4.*

2500 Amp **Copper CU** Spectra GE Bus Duct  FJGBAAAZACD2222 Busway Duct  $2,000.000   Bar Type: **Copper (CU)** *http://store.gibuys.com. Attached to June 30, 2011 Office Action, p8.*

Tivoni The Balance in your life!: Oligo Tiv-**CU Cupper-CU Cu Copper-CU**: Extracted from Alfalfa: Respiratory difficulties, anemia, frequent infections, inflammations and viruses, demyelination and nerve fiber lesions, joint disorders, growth disorders, general weakness, premature graying. *www.tivoni.com. Attached to June 30, 2011 Office Action, p10.*

Indiamart.com India's Largest B2B Marketplace: **Copper (CU)** Isotope 63/65 Non-Radioactive Powder (Offer to Sell): Trade Lead Description: Quality of **Copper (CU)** Non-Radioactive Isotope 63/65. *www.tradeboss.com. Attached to June 30, 2011 Office Action, p12.*

Creative Cuisine and a Copper Décor: CU29 has been brightening the South Shore dining scene since it opened in Sayville in mid-November.  Its [sic] name combines the symbol for **copper (CU)** on the periodic table of elements with its atomic number (29).  It is a reference to semiconductors; copper is widely used in their manufacture, and the restaurant's owner, Manny Lakios, works in a related

business. *New York Times, Sunday January 31, 2010.  Attached to June 30, 2011 Office Action, p1.*

Pull-Out Poster; Gardening Calendar: Micronutrients include 1 percent to 2 percent iron (FE), 1 percent to 2 percent manganese (Mn) and trace amounts of **copper (CU)** and boron (B).  Broadcast under canopy of palms. *The Florida Times Union January 6, 2008.  Attached to June 30, 2011 Office Action, p1.*

The care and treating of aluminum wiring: When using aluminum wire, the devices connected to it must be designed for use with aluminum.  On the back of switches or outlets, some stipulate only **copper (CU)** wire use, while others indicate CU/AL (aluminum) compatibility.  This applies to splicing devices, too. *The Houston Chronicle Publishing Company October 12, 2002.  Attached to June 30, 2011 Office Action, p1.*

Light Labor; Sooner or Later, That Switch Will Need a Fix: Houses with copper wiring should use solely switches marked **copper or CU**.  The designation for aluminum wiring is CO/ALR.  It is good to test continuity on the new switch, to prevent headaches if it is defective. *Chicago Tribune January 21, 1995.  Attached to June 30, 2011 Office Action, p1.*

Casablanca Mining Symbol Change From UEGY to CUAU: Casablanca Mining (OTCBB: UEGY) announced today that the Company has obtained approval to change its trading symbol from UEGY to CUAU effective February 17, 2011.  The symbol change reflects the company's name change to Casablanca Mining, Ltd., and the company's primary focus on **copper (CU)** and gold (AU) mining through its wholly-owned subsidiary, Santa Teresa Minerals.
*Business Wire February 16, 2011.  Attached to June 30, 2011 Office Action, p1.*

Table 6 Projected Global Sales of Recycled metals by Type, Through 2014 ($ Millions) 25
Aluminum (AL) 25
Pricing Trends 26
**Copper (CU)** 26
Pricing Trends 26
Gold (AU) 27
Pricing Trends 27
*www.reportlinker.com.*

*Attached to June 30, 2011 Office Action, p1.*

Applicant argues in response to this evidence that the fact that "CU" appears next to the term copper in almost all of the references indicates that consumers would not otherwise know that it refers to copper.  We note in this regard that how consumers will understand the meaning of the term "CU" must be evaluated in relation to the goods for which registration is sought.  That a term may have other meanings in different contexts is not controlling. *See In re Bright-Crest, Ltd*., 204 USPQ 591, 593 (TTAB 1979); *In re Tower Tech Inc*., 64 USPQ2d 1314, 1316-17 (TTAB 2002) ("[t]he question is not whether someone presented with only the mark could guess what the goods or services are.  Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them.").  We find, as discussed *infra,* that copper is a common ingredient in dietary supplements.  Accordingly, consumers encountering applicant's mark with the term "CU" will likely understand the term in context to refer to the chemical element copper.

Applicant also claims that consumers would immediately understand that CU, as used in connection with its goods, means "Controlled Uptake," rather than "copper."  However,

there is no evidence that CU is a recognized abbreviation for "Controlled Uptake."[3] As such, even though applicant's specimen label, as shown below, describes the goods as "Alpha Lipoic Acid Controlled Uptake Formula," we are not persuaded that consumers would understand the CU in the mark as the initials for "Controlled Uptake" as used in that phrase. We also note that the phrase "Alpha CU™ (Controlled Uptake)" appears on the side panel of the specimen but again, it is not clear that consumers would even notice this insignificantly placed phrase, let alone make the connection between "CU" and "Controlled Uptake." We further note that any clarifying features of an applicant's advertising do not serve to overcome deceptiveness in a mark. Rather, the mark must stand on its own. See *In re Budge*, 8 USPQ2d at 1261; *In re ALP of S. Beach Inc.,* 79 USPQ2d 1009, 1014-1015 (TTAB 2006) (CAFETERIA deceptive for "restaurants providing full service to sit-down patrons, excluding cafeteria-style restaurants"). Thus we find the first prong of the Section 2(a) deceptiveness test to be satisfied.

---

[3] Because there is no evidence that "CU" is a recognized abbreviation for "controlled uptake," and CU is a term that is used for dietary supplements, we need not consider whether the application needs to be remanded to the examining attorney for consideration of whether a disclaimer requirement based on mere descriptiveness should be raised.



For the second prong of the deceptiveness analysis, we ask whether consumers are likely to believe that the misdescription actually describes the goods.  In this regard, the examining attorney submitted evidence to show that copper is a common ingredient in dietary supplements or itself a supplement, as shown by the record:

> Copper supplements are available in pill or capsule form.  Copper is often added to vitamin supplements. *www.cancer.org.  Attached to May 29, 2010 Office Action, p7.*

> Intake of copper supplements helps lower LDL cholesterol and increase HDL cholesterol, thereby safeguarding the body against heart disease. *www.ayurevediccure.com. Attached to May 29, 2010 Office Action, pp13-14.*

> Health Information Directory: Copper Supplements: Our bodies need copper to aid the body in the use of iron.  Without copper we could not grow and function normally.

Copper is found in several natural dietary sources.  It comes from seafood, especially oysters, nuts, beans, whole grains, meat from organs and can also be found in some drinking water.  In a home that has copper pipes and uses copper cookware a person may get even more copper.  Most people who eat some or all of these foods will get enough copper through their regular diet.  However there are times in which it may be necessary to add more copper to the diet through a form of a copper supplement. *www.ihealthdirectory.com. Attached to May 29, 2010 Office Action, p20.*

Are copper supplements necessary?: Copper supplements are generally not recommended for healthy adults who consume a well-balanced diet and eat a wide range of foods.  However, copper supplementation is necessary for premature or low birth weight infants, infants being fed unfortified formula or cow's milk during the first year of life, and malnourished young children.  Copper supplementation should also be considered for individuals who have illnesses that reduce digestion ... are unable to eat sufficient quantities of food ... take medications which block the body's use of copper, are being treated for anemia with iron supplementation, are recovering from other serious illness or injury, or are at risk for osteoporosis. *Copperinfo.com. Attached to May 29, 2010 Office Action, p15.*

Copper Supplement (Oral Route, Parenteral Route): Copper supplements are used to prevent or treat copper deficiency.  The body needs copper for normal growth and health.  For patients who are unable to get enough copper in their regular diet or who have a need for more copper, copper supplements may be necessary.  They are generally taken by mouth but some patients may have to receive them by injection.  Copper is needed to help your body use iron.  It is also important for nerve function, bone growth, and to help your body use sugar. *Mayoclinic.com. Attached to May 29, 2010 Office Action, p22.*

Copper supplements are available as cupric oxide, copper gluconate, copper sulfate, and copper amino acid chelates. *www.vitamin-supplements.org. Attached to May 29, 2010 Office Action, p33-34.*

Copper is also found in most good daily multi supplements. *http://minerals.vitaminsdeficiency.org. Attached to May 29, 2010 Office Action, p25.*

http://www.vitaminshoppe.com/search/en/query.jsp?trail=SRCH%3Acopper&sort=&q=copper&pageNum=0
12/15/2010 03:31:45 PM



*www.vitaminshoppe.com. Attached to December 15, 2010 Office Action, p5.*



www.luckyvitamin.com.  Attached to June 30, 2011
Office Action, p14.

We find that, because the evidence shows that copper

is a common supplement or ingredient in dietary

supplements, consumers will believe, based on the mark and

the goods at issue, that applicant's goods contain copper.

Thus, the second prong of the Section 2(a) deceptiveness test has also been satisfied.

In the third prong of the deceptiveness analysis, we ask whether the misdescription is material to consumers' decision to purchase the goods. *See In re Budge*, 8 USPQ2d at 1260. The examining attorney has submitted the following evidence to show that the intake of the chemical element copper is necessary for a person's health:

> Description: Copper is a required nutrient. It is found naturally in foods such as seafood, liver, green vegetables, whole grains, wheat bran, lentils, and nuts. Copper helps regulate blood pressure and heart rate and is needed to absorb iron from the gut. It is used to make many important compounds in the body. *www.cancer.org. Attached to the May 29, 2010 Office Action, p7.*

> Copper Health Benefits: Copper is an important nutrient required for the proper growth and development of our body. It helps the body perform an array of vital functions and is significant for healthy living. *www.ayurvediccure.com. Attached to the May 29, 2010 Office Action, pp13-14.*

> Health Benefits of Copper: Do You Get Enough?: Until recently, it was generally believed that most people consumed adequate quantities of copper. However, modern research has shown that only 25% of the U.S. population consume the amount of copper a day estimated to be adequate by the U.S. Food and Nutrition Board of the National Academy of Sciences. *www.delafrontera.com. Attached to May 29, 2010 Office Action, p18.*

CopperInfo: Copper is necessary for the growth, development, and maintenance of bone, connective tissue, brain, heart, and many other body organs. It is involved in the formation of red blood cells, the absorption and utilization of iron, and the synthesis and release of life-sustaining proteins and enzymes.  These enzymes in turn produce cellular energy and regulate nerve transmission, blood clotting, and oxygen transport.  *www.copperinfo.com.  Attached to May 29, 2010 Office Action, p15.*

Copper health benefits: Why do we need copper: We need copper to make an enzyme that keeps your arteries flexible.  If we don't get enough, they could rupture.  We also need copper to make the insulating sheath that covers our nerves.  Copper works with iron to keep our red blood cells healthy.  It's also very important for making the natural antioxidant superoxide dismutase (SOD). Copper is essential for the utilization of vitamin C.  *http://minerals.vitaminsdeficiency.org.  Attached to May 29, 2010 Office Action, p25.*

Organic Facts: Health Benefits of Copper: The health benefits of copper include proper growth, utilization of iron, enzymatic reactions, connective tissues, hair, eyes, ageing and energy production.  Apart from these, heart rhythm, thyroid glands, arthritis, wound healing.  RBC formation and cholesterol are other health benefits of copper.  *www.organicfacts.net.  Attached to May 29, 2010 Office Action, p28.*

Bright Hub: The Health Benefits of Copper: Copper plays an important role in many physiological functions.  One of the most important activities of copper in the body is its function in iron metabolism.  *www.brighthub.com.  Attached to May 29, 2010 Office Action, p31.*

> The body needs copper for normal growth and
> health.  Copper is needed to help body [sic] use
> iron.  It is also important for nerve function,
> bone growth, and to help body [sic] use sugar.
> *www.vitamin-supplements.org.*
> *Attached to May 29, 2010 Office Action, p33-34.*

Since the evidence shows that copper has important and desirable health benefits, we find that its presence as an ingredient -- or indeed its absence -- would be material to the decision of consumers to purchase applicant's dietary supplements.  Thus, the third and final prong of the Section 2(a) deceptiveness test has also been satisfied.

In sum, after reviewing the evidence of record, we find that all three prongs of the deceptiveness test have been satisfied: 1) applicant's mark misdescribes its goods because consumers would understand the letters "CU" in the context of the goods sought to be registered to refer to copper, and the goods do not contain this chemical element; 2) due to the inclusion of copper as an ingredient in dietary supplements, consumers are likely to believe the misdescription; and 3) due to the health benefits of copper, the misrepresentation will materially affect the decisions of consumers whether to purchase the goods.  The examining attorney's evidence established a prima facie case against registration, and applicant did not meet its burden to come forward with countering evidence to overcome

the refusal.  *See Budge*, 857 F.2d at 776, 8 USPQ2d at 1260.

Therefore, the trademark refusal under Section 2(a) is affirmed on the ground that the mark sought to be registered is deceptive of a feature or ingredient of the identified goods.  In view thereof, we need not reach the examining attorney's alternative requirement for a disclaimer of CU.

**Decision:  The 2(a) refusal to register is affirmed.**