This Opinion Is a
Precedent of the TTAB

Mailed: May 17, 2018

## UNITED STATES PATENT AND TRADEMARK OFFICE

————

## Trademark Trial and Appeal Board

————

In re Canine Caviar Pet Foods, Inc.

————

Serial No. 85710350

————

Lindsay J. Hulley of Rutan & Tucker, LLP
  for Canine Caviar Pet Foods, Inc.

Brian Pino, Trademark Examining Attorney, Law Office 114
  K. Margaret Le, Managing Attorney.

————

Before Bergsman, Ritchie, and Hightower,
  Administrative Trademark Judges.

Opinion by Ritchie, Administrative Trademark Judge:

Canine Caviar Pet Foods, Inc. ("Applicant") seeks registration on the

Principal Register of the mark CANINE CAVIAR, in standard characters, for

"animal foodstuffs, pet foods, edible pet treats," in International Class 31.[1]

Applicant includes a disclaimer of "CANINE" in the alternative and a claim of

acquired distinctiveness of the mark as a whole.

---

[1] Application Serial No. 85710350 was filed on August 22, 2012, under Section 1(a) of
the Trademark Act, 15 U.S.C. § 1051(a), alleging dates of first use and first use in
commerce of 1998.

The Examining Attorney has refused registration under Section 2(a) of the Trademark Act of 1946, 15 U.S.C. § 1052(a), on the ground that the mark sought to be registered is deceptive in relation to the identified goods. The Examining Attorney additionally refused registration on the ground that the mark is deceptively misdescriptive under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1). The Examining Attorney also required a disclaimer of the term "CANINE" under Sections 6(a) and 2(e)(1) of the Trademark Act, 15 U.S.C. §§ 1056(a) and 1052(e)(1), arguing that the term is highly descriptive of Applicant's goods, has not acquired distinctiveness, and that without the disclaimer, Applicant's claim of acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f), for the applied-for mark CANINE CAVIAR (to overcome the Section 2(e)(1) refusal) cannot be accepted.

When the refusals were made final,[2] Applicant filed an appeal. Applicant and the Examining Attorney each filed briefs, and Applicant filed a reply brief.

A. Section 2(a) Deceptiveness

In accordance with Section 2(a) of the Trademark Act, registration must be refused if a mark is deceptive in relation to the identified goods. The Examining Attorney contends, specifically, that the term "CAVIAR" in Applicant's mark would be understood by consumers to refer to a type of food

---

[2] There is a long prosecution history in this case, including several suspensions and another refusal and requirements. It is not necessary, nor would it be helpful, to discuss the entire history here. The final refusals are as set forth in the preceding paragraph.

or ingredient which is not in fact included in Applicant's "animal foodstuffs, pet foods, edible pet treats."

The Office has the initial burden of putting forth a prima facie case that a trademark falls within the prohibition of Section 2(a). *In re Budge Mfg. Co.*, 857 F.2d 773, 8 USPQ2d 1259, 1260 (Fed. Cir. 1988). The test for deceptiveness is: 1) whether the mark misdescribes the goods; 2) if so, whether consumers would be likely to believe the misrepresentation; and 3) whether the misrepresentation would materially affect potential purchasers' decisions to purchase the product. *Id.*; *see also In re California Innovations, Inc.*, 329 F.3d 1334, 66 USPQ2d 1853, 1854 (Fed. Cir. 2003); *In re White Jasmine LLC*, 106 USPQ2d 1385 (TTAB 2013); *In re E5 LLC*, 103 USPQ2d 1578 (TTAB 2012).

1. Whether the mark misdescribes the goods

In looking at the first element, we must decide whether the term "CAVIAR" misdescribes the goods for which Applicant seeks registration. We note, in this regard, that a mark may be held deceptive under Section 2(a) due to the misdescriptiveness of one of the terms, as long as the mark is then analyzed as a whole. *See In re Budge*, 8 USPQ2d at 1260 (LOVEE LAMB deceptive for "automotive seat covers" that are "wholly made from synthetic fibers"); *In re E5 LLC*, 103 USPQ2d at 1579 ( α cu found 2(a) deceptive for "dietary supplements" that do not contain copper).

There are several definitions of "caviar" of record:

> Caviar: 1. Processed salted roe of large fish (as sturgeon); 2. Something considered too delicate or lofty for mass appreciation

– usually used in the phrase *caviar to the general;* 3. Something considered the best of its kind.[3]

Caviar: The salted roe of sturgeon, esp. the beluga, usually served as an hors d'oeuvre.[4]

We note that it is not clear whether the latter entry had further, alternative definitions that were not included by the Examining Attorney, as the page appears to be cut off. It is apparent from the submission by Applicant, nevertheless, that there are several alternative definitions for "caviar."

There is no dispute that Applicant's goods do not contain caviar (fish roe). Applicant confirmed in a request for information that "Applicant's goods do not contain caviar as an ingredient in the goods associated with Applicant's Mark."[5] The Examining Attorney therefore argues that the mark is misdescriptive of the goods under the first prong of Section 2(a) of the Trademark Act.

Applicant, however, argues that the term is not misdescriptive because the relevant consumers, when viewing the mark as a whole, are likely to think of CANINE CAVIAR not in reference to "fish roe" but rather under the alternative definition of "the best of its kind." In short, consumers viewing the

---

[3] Merriam-Webster.com; attached to September 22, 2014 Response to Office Action, at 20.

[4] Collinsdictionary.com/dictionary/English; attached to July 23, 2013 Final Office Action, at 2. We note that Collins Dictionary offers a British and an American version. This entry by the Examining Attorney is from the British version, which does not necessarily evidence perceptions of the term by consumers in the United States. *See In re Manwin/RK Collateral Trust,* 111 USPQ2d 1311, 1313 n.18 (TTAB 2014) (finding such definitions from the British version of Collins Dictionary to be "of little or no probative value").

[5] June 24, 2013 Response to Office Action.

mark CANINE CAVIAR in relation to Applicant's pet food products, rather than thinking that it contains caviar as an ingredient, will think that it is "the caviar of pet foods," thus referring to a high quality product.

In support of this argument, Applicant submitted the declaration of an expert linguist, Professor Robert A. Leonard. Professor Leonard emphasizes that caviar has more than one common definition, as discussed above, including that of "high quality" or "superior quality."[6] In this regard, he refers to dictionary definitions, third-party registrations from which the term "CAVIAR" is not disclaimed, and online sources.[7] Professor Leonard notes that the term "caviar" has taken on a "metaphorical" meaning, either meant to be taken seriously or sometimes tongue in cheek, of "the caviar of . . .".[8] Some examples he gives of online uses specifically in relation to food are Pimento Dip: the Caviar of the South;[9] Boiled peanuts: The "Caviar of the South";[10] The Caviar of Cantaloupe;[11] The Caviar of Vegan Treats;[12] Bird's Nest: The Caviar of the East;[13] and 'Caviar of protein': Old Mill Creek store stocks exotic meat.[14]

---

[6] 4 TTABVUE 196.
[7] 4 TTABVUE 196.
[8] 4 TTABVUE 197-203.
[9] 5 TTABVUE 272; Cappersfarmer.com.
[10] 5 TTABVUE 280; Cbsnews.com.
[11] 6 TTABVUE 18; Buzzfeed.com.
[12] 6 TTABVUE 68; http://mass.innovationnights.com.
[13] 6 TTABVUE 46; Flavorandfortune.com.
[14] 6 TTABVUE 73; Chicagotribune.com.

Additional examples from USPTO records include THE CAVIAR OF MAINE;[15] TEXAS CAVIAR;[16] and WILD RICE: THE CAVIAR OF GRAINS.[17]

Applicant's mark is not, however, "THE CAVIAR OF PET FOOD," or "THE CAVIAR OF CANINES." Rather, it is CANINE CAVIAR. In considering the alternative definitions of "caviar," and its placement in the mark, we consider the relevant consumers, who would be consumers of the applied-for goods, "animal foodstuffs, pet foods, edible pet treats," or typical pet owners in the United States. We find that some consumers would understand "caviar" to mean "fish roe," and based on this understanding of the word it misdescribes a feature or ingredient of Applicant's goods, because it refers to an ingredient which is not in fact present in Applicant's goods. We also find that other consumers would understand "caviar" in the context of these goods to mean something that is superior, which is not misdescriptive of Applicant's goods.

We turn to the second prong of our analysis for further assessment of the evidence presented by the parties.

2.  Whether consumers would be likely to believe the misrepresentation

For the second prong of the deceptiveness analysis, we ask whether consumers are likely to believe that the misdescription actually describes the goods. The Examining Attorney submitted evidence that the applied-for goods,

---

[15] 5 TTABVUE 44; Registration No. 2740509, for dried and processed wild Maine blueberries.
[16] 4 TTABVUE 289; Registration No. 1607552, for olives stuffed with jalapenos.
[17] 5 TTABVUE 32; Registration No. 2511681, for promoting the consumption of wild rice.

"animal foodstuffs, pet foods, edible pet treats," may contain caviar, and that pet owners may give caviar to their pets. There are, however, two problems with the submitted evidence.

First, several of the websites are "cached," or stored, and Applicant objected that the sites were not active. We note that the caveat that Internet printouts must include a date and source/URL applies equally to evidence submitted by Examining Attorneys in ex parte cases as it does to parties involved in inter partes cases, and is important because it ensures that an applicant can verify the information presented in the case. *See In re Mueller Sports Medicine, Inc.,* ___ USPQ2d ___, Serial No. 87209946 (TTAB 2018); *Safer Inc. v. OMS Investments Inc.,* 94 USPQ2d 1031, 1039 (TTAB 2010) (holding that an Internet printout may be admissible pursuant to a notice of reliance as long as it "identifies the date of publication or date that it was accessed and printed, and its source (e.g., the URL)"); *see also* Trademark Manual of Examination Procedure (TMEP) § 710.01(b) (October 2017) ("When making Internet evidence part of the record, the examining attorney must both (1) provide complete information as to the date the evidence was published or accessed from the Internet, and its source (e.g., the complete URL address of the website), and (2) download and attach the evidence to the Office action."); *but see In re International Business Machines Corp.*, 81 USPQ2d 1677, 1682 n.9 (TTAB 2006) (Board considered web pages that did not include web addresses because applicant did not object to them).

7

Examples of the cached websites referenced by the Examining Attorney include the protracted URL for the following image, as shown on p. 47 of the March 21, 2014 Office Action:



To be clear, evidence of a cached website may be admissible if there is a date and URL on the web page, and there is no contrary evidence that the URL no longer resolves to an active website. However, in addition to voicing an

objection, Applicant provided a printout of a web page, indicating that the cached site referenced above was no longer active:[18]



[18] September 22, 2014 Response to Office Action at 15.

Thus, although the Examining Attorney's evidence did properly include a URL and date, due to Applicant's objections that certain sites are not active, we find that such evidence is not probative.[19]

The second problem with the Examining Attorney's evidence is that several of the websites submitted by the Examining Attorney refer to foreign use.[20] The first refers to an "ultra luxury pet food line" being launched in the UK, and refers to prices in British pounds:

> Holistic petfood company Green Dog Food launches ultra luxury petfood line: Dog food priced at £200 for a 2kg pack, contains high-expense ingredients: . . . Green Dog Gold is a superpremium complete natural food with a seafood-inspired recipe. Ingredients include swordfish, lobster, Beluga caviar, . . .
> Green Dog Food MD Simon Booth said the idea for the ultra-luxury product came following requests from some of the brand's more high-profile customers. "We count some of the UK's most affluent dog owners among our customers, including MDs, CEOs, celebrities and other VIPs, and for them, money is no object when it comes to treating their prized pets," he said.[21]

Another discusses a special sale of "luxurious cat food" in London:

> Michelin star moggies: new pet food made from lobster and Beluga caviar sells out in an hour as fancy felines lap it up: The world's most luxurious cat food, created by celebrity chef and restauranteur Simon Rimmer, has sold out – just 50 minutes after going on sale in London's Covent Garden.[22]

---

[19] If a cached website resolves to an active link, there may still be issues raised as to the probative value of the evidence, including, but not limited to, the probative weight to assign consumer perceptions as of the original publishing date.

[20] Another website of record, submitted by Applicant, refers to a "member of the Civic Chamber of Moscow" who "posted images to Twitter of her cat eating caviar" with some "serious backlash on social media." Businessinsider.com; Attached to November 2, 2015 Response to Suspension Inquiry, at 62.

[21] www.petfoodindustry.com; Attached to June 7, 2016 Final Office Action, at 29-30.

[22] www.imbrandon.com; Attached to June 7, 2016 Final Office Action, at 54.

While evidence of foreign use may in some cases be probative, in this case it does not serve to tell us the norms specific to pet owners in the United States, who are the relevant consumers. *See In re Bayer Aktiengesellschaft,* 82 USPQ2d 1828, 1835 (Fed. Cir. 2007) ("The probative value, if any, of foreign information sources must be evaluated on a case-by-case basis."); *see also* Trademark Trial and Appeal Board Manual of Procedure (TBMP) § 1208.03 (June 2017); *cf. In re Int'l Business Machines Corp.,* 81 USPQ2d at 1681 n.7 (web page from foreign source considered because case involved computer technology, and "it is reasonable to consider a relevant article regarding computer hardware" from an English-language website from another country); *In re Remacle,* 66 USPQ2d 1222, 1224 n.5 (TTAB 2002) ("professionals in medicine, engineering, computers, telecommunications and other fields are likely to utilize all available resources, regardless of country of origin or medium").

In sum, putting aside cached websites that Applicant could not verify, duplicative sources, and irrelevant information about foreign uses, the evidence submitted by the Examining Attorney consists of several references to Beverly Hills Caviar, promising that "your dog will surely love you forever" if you feed them this "elitist food" from "Beverly Hills, CA,"[23] a reference to another pet food, Iceland Pure, advertising "Caviar Treats for dogs & cats,"[24]

---

[23] *See* caviarinc.com; attached to March 21, 2014 Office Action, at 38; *see also* Beluga-caviar-shop.com; attached to June 7, 2016 Final Office Action, at 36, referencing the same brand.

[24] Icelandpure.com; attached to March 21, 2014 Office Action, at 54.

and to a blog headlined "It's a Dog Eat Caviar World," which laments that "It's not that I don't think pets deserve to be treated well and given treats and all that, but I think that, up to a certain point, it's doubtful that a dog or cat will really notice the difference between regular pet food and caviar."[25]

For its part, Applicant submitted declarations stating that the relevant consumers would not expect caviar to be an ingredient in Applicant's applied-for "animal foodstuffs, pet foods, edible pet treats." In support, Applicant submitted the declaration of Robert E. Broyles, a long-term consultant in the animal feed industry, with experience in the registration of products in compliance with the rules and regulations of the Association of American Feed Control Officials (AAFCO).[26] Mr. Broyles states that "I am familiar with product ingredients for pet foods marketed by various companies throughout the United States. I am familiar with hundreds of ingredients that are used in pet food." He adds that "The use of caviar as an ingredient in pet food essentially is non-existent."[27] Applicant also submitted declarations from two distributors of Applicant, from the National Sales Director for Applicant, and from the Vice President and one of the owners of Applicant. Each of these stated that they are not aware of anyone being deceived or confused into

---

[25] Biconews.com; attached to June 7, 2016 Final Office Action, at 34.
[26] Declaration, dated December 6, 2016; 4 TTABVUE 141.
[27] 4 TTABVUE 142.

thinking that Applicant's CANINE CAVIAR contains caviar, but rather that the mark is understood as conveying a metaphor for high quality food.[28]

The Examining Attorney argues that the declarations submitted by Applicant are "of questionable probative value on the basis of potential self-interest alone."[29] The Examining Attorney further argues that "the declarants have not been subject to any cross examination that would allow the Office to potentially gather information that categorically undermines the applicant's arguments and the declarations of record."[30] The Examining Attorney cites Board precedent, noting that the Board is charged with determining its own legal conclusions. *Plyboo America Inc. v. Smith & Fong Co.,* 51 USPQ2d 1633, 1640 (TTAB 1999). There, the Board quoted an earlier case in stating,

> We note, however, that the opinion of an asserted expert in linguistics is simply not dispositive since, as stated in *Tanners' Council of America, Inc. v. Scott Paper Co.,* 185 USPQ 630, 637 (TTAB 1975):
>
>> [I]t is well established that the expressions of opinion by witnesses, including persons considered to be experts in a particular field on any question before the Board, is not binding upon the Board for "if such testimony were adopted without considering other aspects of the case, the effect would be to substitute the opinion of the witnesses for the ultimate decision to be reached by the Court and would therefore be improper." *The Quaker Oats Company v. St. Joe Processing Company, Inc.,* [232 F.2d 653], 109 USPQ 390 at 391 (CCPA 1956).

---

[28] *See* Declaration of Sabrina Sierra, dated December 7, 2016, 6 TTABVUE 287; Declaration of Bob Vella, dated December 6, 2016, 6 TTABVUE 289; Declaration of Gary Ward, dated December 6, 2016, 6 TTABVUE 290; and Declaration of Brian Zeigler, dated December 7, 2016, 6 TTABVUE 291.

[29] 11 TTABVUE 8.

[30] 11 TTABVUE 9.

While it is axiomatic that the Board must make its own determinations on legal issues, the witnesses are also providing factual testimony, which is that they are not aware of anyone being confused or deceived into thinking that Applicant's CANINE CAVIAR contains caviar (fish roe). As to the Examining Attorney's argument that we should dismiss these statements as self-serving, or perhaps we should not accept declarations in ex parte cases since they are not subject to cross-examination, he is mistaken. Consistent with long-standing practice, we accord these declarations such probative value as they may have, and weigh them with the totality of the evidence.[31] As noted in the TBMP:

> The Board generally takes a somewhat more permissive stance with respect to the admissibility and probative value of evidence in an ex parte proceeding than it does in an inter partes proceeding. . . . the affidavit or 37 CFR § 2.20 declaration is an established method for the introduction of evidence in an ex parte proceeding without the option of cross examination.[32]

In analyzing the evidence as a whole, we acknowledge that there is at least one company, and maybe a few, that offer caviar for pets as a special, luxury item. However, this is overwhelmed by the countervailing evidence that caviar is almost never used as an ingredient in pet food, and that after 20 years of use of CANINE CAVIAR, consumers have not mistakenly believed it to contain caviar. We are not persuaded by the unusual actions of a few extravagant

---

[31] To the extent the declarations, including the declaration of Professor Robert E. Leonard, do contain legal conclusions, our precedent and statutory authority require us to make our own legal determinations in each case.

[32] TBMP § 1208 (June 2017).

consumers whose actions do not reflect the norm. While we expect most pet owners to cherish their pets, we do not expect that they consider it to be reasonable to spend over one hundred times the cost of comparable pet food on a single meal for these treasured creatures.[33]

In conclusion, we have found with regard to the first prong that the relevant consumers may understand CANINE CAVIAR to refer to a high quality product or alternatively to refer to goods that contain caviar (fish roe). Given the lack of evidence that "animal foodstuffs, pet foods, edible pet treats" is likely to contain caviar, however, we find that those consumers who perceive the word "caviar" in the mark CANINE CAVIAR to mean "fish roe" are not likely to believe that Applicant's goods contain caviar. Thus the mark is not deceptive of Applicant's applied-for goods under Trademark Act Section 2(a).

Moreover, because these first two prongs of the Trademark Act Section 2(a) deceptiveness analysis are the same as the test for whether a mark is deceptively misdescriptive under Trademark Act Section 2(e)(1), the mark is also not deceptively misdescriptive of the applied-for goods. *See* TMEP § 1203.02(c) (October 2017); *In re Budge,* 8 USPQ2d at 1260; *In re White Jasmine LLC,* 106 USPQ2d at 1394. In view of this determination, Applicant's assertion of acquired distinctiveness for the mark CANINE CAVIAR as a whole is moot.

---

[33] Evidence of record shows that it may cost as much as "roughly $500 per serving" for caviar. *See* Gourmet.com; Attached to July 23, 2013 Final Office Action, at 8. Applicant's specimen lists the "Suggested Retail" of its CANINE CAVIAR dog food at $2.99; Attached to August 22, 2012 Application, at 3.

15

B. Disclaimer Requirement

We next consider the requirement for Applicant to disclaim the term "CANINE" apart from the mark as shown.[34] Under Trademark Act Section 6(a), 15 U.S.C. § 1056(a), "[t]he Director may require the applicant to disclaim an unregistrable component of a mark otherwise registrable," such as a component which is merely descriptive under Trademark Act Section 2(e)(1), 15 U.S.C. § 1052(e)(1). TMEP § 1213.08(b) (October 2017); *see also In re Grass GmbH,* 79 USPQ2d 1600, 1603 (TTAB 2006). A term is deemed to be merely descriptive of goods or services, within the meaning of Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. *See In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (citing *In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987)); *see also In re TriVita, Inc.,* 783 F.3d 872, 114 USPQ2d 1574, 1575 (Fed. Cir. 2015); *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). Whether a term is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with those goods or services, and the possible significance that the term would have to the average purchaser of the

---

[34] Applicant consented to entry of the disclaimer, in the alternative, in the event that we find it necessary to the registration of Applicant's mark. 9 TTABVUE 12. Thus, we may enter the disclaimer.

goods or services because of the manner of its use. *In re Bright-Crest, Ltd.*, 204 USPQ 591, 593 (TTAB 1979).

That a term may have other meanings in different contexts is not controlling. *Id.* Moreover, it is settled that "[t]he question is not whether someone presented with only the mark could guess what the goods or services are. Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them." *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.,* 695 F.3d 1247, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012); *In re Tower Tech Inc.*, 64 USPQ2d 1314, 1316-17 (TTAB 2002); *see also In re Patent & Trademark Servs. Inc.*, 49 USPQ2d 1537 (TTAB 1998); *In re Home Builders Ass'n of Greenville*, 18 USPQ2d 1313 (TTAB 1990)*; In re American Greetings Corp.*, 226 USPQ 365 (TTAB 1985). On the other hand, if a mark requires imagination, thought and perception to ascertain the nature of the goods or services, then the mark is suggestive. *DuoProSS*, 103 USPQ2d at 1755 (citing *In re Abcor Dev. Corp.,* 200 USPQ at 218).

The Examining Attorney argues that "CANINE" describes a feature or function of Applicant's goods, namely that Applicant's "animal foodstuffs, pet foods, edible pet treats" includes food for canines, or dogs. The Examining Attorney submitted the following definition of "CANINE," in relevant part:

Canine: Of or resembling a dog; doglike.[35]

---

[35] Collinsdictionary.com/dictionary/English; attached to July 23, 2013 Final Office Action, at 9.

Although this is from the "British" version of Collins Dictionary (see discussion *supra*), Applicant also submitted a definition:

Canine: dog.[36]

There is no dispute that Applicant's "animal foodstuffs, pet foods, edible pet treats" includes food for dogs. Indeed the specimen submitted by Applicant is for dog food:



Applicant argues nevertheless that, regardless of the meaning of "CANINE," the term need not be disclaimed because CANINE CAVIAR is a

---

[36] Merriam-Webster.com; attached to June 24, 2013 Response to Office Action, at 8.

unitary mark.[37] To support this argument, Applicant submitted the expert testimony of linguist Professor Robert A. Leonard, as also discussed above. Professor Leonard testified that the mark is unitary because it is alliterative, and that it would most readily be understood in the context of Applicant's applied-for goods as suggestively referring to high quality pet food. [38]

A mark is considered "unitary" if "the elements of a mark are so integrated or merged together that they cannot be regarded as separable." TMEP § 1213.05 (October 2017). As such, a unitary mark has a "single and distinct commercial impression." *Dena Corp. v. Belvedere Int'l Inc.,* 950 F.2d 1555, 21 USPQ2d 1047, 1052 (Fed. Cir. 1991) (finding EUROPEAN FORMULA and design for cosmetic products not unitary since "the elements are not so merged together that they cannot be regarded as separate" and the proximity of the words to the design feature "does not endow the whole with a single, integrated, and distinct commercial impression"). Thus, a phrase is unitary "if the whole is something more than the sum of its parts." TMEP § 1213.05(b) (October 2017); *see also In re Colonial Stores Inc.,* 394 F.2d 549, 157 USPQ 382 (CCPA 1968) (SUGAR & SPICE held not merely descriptive of bakery products); *In re Shutts,* 217 USPQ 363 (TTAB 1983) (SNO-RAKE held not merely descriptive of snow removal hand tool). Even Applicant and its linguistic expert, however, do not argue that there is additional meaning to

---

[37] 11 TTABVUE 12.
[38] 4 TTABVUE 196.

CANINE CAVIAR beyond "luxury dog food,"[39] or "something luxurious for dogs (to eat)"[40] which is simply the meaning of the two words in the context of Applicant's applied-for "animal foodstuffs, pet foods, edible pet treats."

As for the argument that CANINE CAVIAR is unitary because it is alliterative, the Examining Attorney submitted numerous examples of third-party registrations on the Principal Register with CANINE as a term that are similarly alliterative and which are registered for similar pet food products, but where CANINE is disclaimed.[41] These include the following:

| Mark | Registration No. | Relevant Goods | Disclaimed Term |
|---|---|---|---|
| CANINE CRUNCHER | 3150010 | "edible dog treats" | CANINE |
| CANINE CARRY OUTS | 1671980 | "pet food" | CANINE |
| CANINE CATTLE COMPANY, and design | 2102185 | pet treats | CANINE and COMPANY |
| CANINE CANDY | 2156157 | "pet food" | CANINE |
| CANINE COMPLETE | 3533540 | "dog food" | CANINE |
| KARMIC CANINE | 4387653 | "pet treats" | CANINE |
| CANINE CATTLE CORRAL | 4628348 | "dog biscuits; dog food" | CANINE |
| THE CANINE CRUNCHERY | 4567607 | "dog biscuits; dog food" | CANINE |
| CANINE CRUMPETS, and design | 4726772 | "dog treats" | CANINE |

---

[39] 4 TTABVUE 197.
[40] 4 TTABVUE 208.
[41] Attached to December 23, 2012 Office Action at 10, 17, and December 20, 2016 Office Action at 4-94.

| Mark | Registration No. | Relevant Goods | Disclaimed Term |
|---|---|---|---|
| CANINE CROSSING | 4816524 | "pet food; pet treats" | CANINE |
| CANINE CAFÉ | 4955530 | "pet food; pet treats" | CANINE |
| DISHES FOR DOGS CANINE KITCHEN, and design | 4884638 | "dog food; dog treats" | FOR DOGS, and CANINE |
| CAMP CANINE | 4040482 | pet products | CANINE |
| CANINE CORRECT TABLEFOOD FOR DOGS | 4401026 | "dog food" | CANINE and TABLEFOOD FOR DOGS |

Considering the evidence and arguments, we have no doubt that the relevant public will immediately understand the term "CANINE" as a separable term to convey information about Applicant's identified "animal foodstuffs, pet foods, edible pet treats" (*i.e.,* that the product is dog food), and that it is merely descriptive thereof and has not acquired distinctiveness. The requirement to disclaim the term "CANINE" is affirmed.

**Decision**: The 2(a) and 2(e)(1) refusals to register are reversed. The requirement to disclaim "CANINE" is affirmed. Because Applicant consented to entry of a disclaimer in the alternative, the application will proceed to publication in due course with a disclaimer of the term "CANINE," worded as follows: "No claim is made to the exclusive right to use 'CANINE' apart from the mark as shown." *See* TMEP § 1213.08(a)(i) (October 2017).